# CCA Scanning Cover Sheet



2456388

CaseNumber: WR-64,582-01

EventDate: 04/24/2006

Style 1: Garcia, Joseph C.

Style 2:

Event code: 11.071 ADD'L VOLUME

EventID: 2456388

Applicant first name: Joseph C.

Applicant last name: Garcia

Offense: 19.03

Offense code: Capital Murder

Trial court case number: W01-00325-T(A)

Trial court name: 283rd District Court

Trial court number: 320570283

County: Dallas

Trial court ID: 329

Event map code: GENERIC

Event description:

Event description code:

Remarks: PGS. 231-484

☐ *Document Scanned*                              ☐ *Created or*
                                                 ☐ *Appended*

_____   _____      _____
*Scanned by*              *date*          *Image ID*

*Comment*

_____

_____

_____

**EX PARTE:**

JOSEPH C. GARCIA

(Applicant)

**WRIT NO.**  W01-00325-T(A) - Volume 2

**IN THE**  283rd JUDICIAL  **DISTRICT**

**COURT** _____, **DALLAS COUNTY, TEXAS**

---

## POST CONVICTION WRIT OF HABEAS CORPUS
## (ARTICLE 11.07, V.A.C.C.P.)

---

ATTORNEY FOR APPLICANT:

Richard Langlois

217 Arden Grove

San Antonio, Texas  78215

Tel. 210/225-0341

ATTORNEY FOR STATE:

HONORABLE BILL HILL

FRANK CROWLEY COURTHOUSE

DALLAS, TEXAS 75207-4313

**JIM HAMLIN**
**DISTRICT CLERK**
**FRANK CROWLEY COURTHOUSE**
**133 NORTH INDUSTRIAL**
**DALLAS, TEXAS 75207-4313**

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 3 of 125  PageID 1793

**EX PARTE:**  **WRIT NO. W01-00325-T(A)**

**JOSEPH C. GARCIA**  **283rd JUDICIAL DISTRICT COURT**

**DALLAS COUNTY, TEXAS**

# I N D E X

STATE'S PROPOSED FINDINGS OF FACT AND  VOL. 2-232
CONCLUSIONS OF LAW

COURT'S FINDINGS OF FACT AND CONCLUSIONS  VOL. 2-358
OF LAW

ORDER FINDING NO CONTROVERTED, PREVIOUSLY  VOL. 2-483
UNRESOLVED FACTUAL ISSUES REQUIRING A HEARING
AND SETTING DEADLINE FOR FILING PROPOSED FINDINGS
AND CONCLUSIONS.

CLERK'S CERTIFICATION  VOL. 2-484

Scanned Aug 29, 2011

CAUSE NO. W01-00325-T(A)

| EX PARTE |  | IN THE 283RD JUDICIAL |
| | | DISTRICT COURT OF |
| JOSEPH C. GARCIA, Applicant | | DALLAS COUNTY, TEXAS |

FILED
DEC 22 2005
JIM HAMLIN
DIST. CLERK, DALLAS CO., TEXAS
DEPUTY

## STATE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the application for writ of habeas corpus, the State's original answer, official court documents and records, and the Court's personal experience and knowledge, the Court makes the following findings of fact and conclusions of law:

### PROCEDURAL HISTORY

Applicant is confined pursuant to the judgment and sentence of this Court in cause number F01-00325-T. On February 6, 2003, a jury convicted applicant of the December 24, 2003 capital murder of Irving police officer Aubrey Hawkins. (CR 2: 295; RR 50: 56). On February 13, 2003, in accordance with the jury's answers to the special issues submitted under article 37.071 of the Texas Code of Criminal Procedure, this Court assessed applicant's punishment at death. (CR 2: 301-03, 308). The Texas Court of Criminal Appeals affirmed applicant's conviction on direct appeal. *See Garcia v. State,* No. AP-74,692 (Tex. Crim. App. Feb. 16, 2005) (not designated for publication).

On December 14, 2004, applicant filed an application for writ of habeas corpus, alleging forty-six grounds for relief. The State filed its original answer on June 10, 2005. On November 22, 2005, this Court determined that no controverted, previously

**ORIGINAL**

232

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 5 of 125 PageID 1795

unresolved factual issues existed and ordered the parties to file proposed findings of fact and conclusions of law by December 22, 2005.

## SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law:

### GROUNDS 1-6: TRIAL COUNSEL'S ALLEGED FAILURE TO REQUEST A JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF FELONY MURDER

Applicant's first six grounds for relief are premised on his contention that trial counsel failed to request a jury charge on felony murder as a lesser-included offense of capital murder.

### *FEDERAL CONSTITUTIONAL CLAIMS*

In grounds one and four, applicant maintains that this alleged failure on the part of counsel deprived him of his rights to due process, trial by an impartial jury, and effective assistance of counsel under the Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution.

### Applicant's Claims Are Procedurally Barred

1.  The Court notes that habeas corpus is not a substitute for an appeal. *Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998). It may not, therefore, be used to litigate matters that could have been raised on direct appeal. *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001). Even constitutional claims are procedurally barred from consideration on habeas review if they could have been raised on appeal. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

233

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 6 of 125 PageID 1796

2.   The Court finds that applicant's claim in ground one that trial counsel's alleged failure to request a jury instruction on felony murder violated his federal constitutional rights to due process and trial by an impartial jury could have been, but was not, raised on direct appeal. *See Garcia.*

3.   Accordingly, the Court concludes that applicant's first ground for relief is procedurally barred and should not be addressed.

4.   The Court further notes that an applicant is barred from challenging the effectiveness of trial counsel for the first time of habeas review when he has failed to utilize the habeas process to develop additional evidence to support his claim. *See Ex parte Nailor*, 149 S.W.3d 125, 131-32 (Tex. Crim. App. 2004); *cf. Ex parte White*, 160 S.W.3d 46, 49 n.1, 51-55 (Tex. Crim. App. 2004) (addressing defendant's ineffective-assistance claim, although it was not raised on direct appeal, where new evidence, developed through the habeas process, was submitted to support the claim).

5.   The Court finds that applicant has not submitted any new evidence, derived from the habeas process, to substantiate his allegation in ground four that he was denied his federal constitutional right to effective assistance of counsel.  Instead, applicant relies exclusively on information contained in the trial record, which was available to him on direct appeal.

6.   The Court finds that applicant's ineffective-assistance claims could have been, but were not, raised on direct appeal.

234

7.  The Court concludes, therefore, that applicant's first and fourth grounds for relief are procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

#### *The record does not support the factual allegations underlying applicant's claims.*

8.  The Court notes that a habeas applicant must prove his factual allegations by a preponderance of the evidence. *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997).

9.  Applicant claims that trial counsel failed to request a jury instruction on felony murder as a lesser-included offense of capital murder. Indeed, applicant contends that counsel failed to "ask for a charge on any lesser-included offense other than aggravated robbery." (Writ Application, p. 8).

10. The Court finds that the record plainly refutes applicant's allegation that trial counsel failed to request a jury instruction on felony murder. The record of the charge conference shows that applicant's counsel actually did request several lesser-included-offense instructions, including an instruction on felony murder. (RR 50: 3). This Court denied the requested instructions. (RR 50: 3).

11. Thus, the Court finds that applicant has failed to prove his factual allegations by a preponderance of the evidence.

12. Furthermore, the Court finds that, because trial counsel actually did request a jury instruction on felony murder, applicant has failed to prove by a preponderance of the evidence that his federal constitutional rights were violated by the absence of such a request.

13.  The Court therefore concludes that applicant suffered no deprivation of his federal constitutional rights due to a failure on the part of trial counsel to request an instruction on felony murder. Grounds one and four should be denied.

*Applicant was not denied effective assistance of counsel.*

14.  The Court notes that to establish ineffective assistance of counsel, applicant must prove by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objection standard of reasonableness, and (2) a probability sufficient to undermine confidence in the outcome exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

15.  Applicant contends that trial counsel was deficient for failing to request an instruction on felony murder as a lesser-included offense of capital murder.

16.  The Court finds that counsel actually did request an instruction on felony murder, which this Court denied. (RR 50: 3).

17.  Accordingly, the Court finds that applicant has failed to sustain his burden of proving by a preponderance of the evidence that counsel was deficient for failing to request a jury instruction on felony murder.

18.  Furthermore, the Court finds that, because counsel actually did what applicant claims he should have by requesting a jury instruction on felony murder, applicant has failed to prove by a preponderance of the evidence that counsel's performance prejudiced his defense.

19. Thus, the Court finds that counsel's performance was not deficient and did not prejudice applicant's defense.

20. The Court concludes, therefore, that applicant was not deprived of his right to effective assistance of counsel under the United States Constitution. *See, e.g., Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) (rejecting defendant's ineffective-assistance claim where the record showed that counsel did everything defendant said he should have). Applicant's fourth ground for relief should be denied.

### *Applicant was not entitled to a jury instruction on felony murder.*

21. The Court notes that an offense is a lesser-included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

22. The Court recognizes that a lesser-included-offense instruction should be given if there is some evidence that would permit the jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *See Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). In other words, there must be

237

some evidence from which a rational jury could acquit the defendant of the greater offense while still convicting him of the lesser-included offense. *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).

23. The Court finds that the indictment in this case charged applicant with the capital murder of Officer Hawkins under two different theories: (1) the intentional or knowing murder of a peace officer who was acting in the lawful discharge of an official duty; and (2) an intentional murder committed in the course of committing or attempting to commit a robbery. (CR 1: 2). *See* TEX. PENAL CODE ANN. § 19.03(a)(1)-(2) (Vernon Supp. 2005).

24. The Court notes that it is well-settled that felony murder is a lesser-included offense of capital murder committed in the course of a robbery. *See Threadgill*, 146 S.W.3d at 665; *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999); *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). The two offenses differ only in the culpable mental state of the offender: capital murder requires the existence of an intentional or knowing cause of death, while in felony murder, the culpable mental state for the act of felony murder is supplied by the mental state accompanying the underlying felony. *Rousseau*, 855 S.W.2d at 673 (citing *Rodriquez v. State*, 548 S.W.2d 26, 29 (Tex. Crim. App. 1977)).

25. Accordingly, the Court concludes that felony murder is a lesser-included offense under one of the theories of capital murder charged in this case: murder committed in the course of a robbery.

238

26. The Court finds, however, that the jury returned a general verdict of guilty after being instructed on both theories of capital murder alleged in the indictment. (CR 2: 295).

27. The Court notes that when an indictment alleges alternative theories of capital murder, "the defendant is entitled to a requested lesser-included offense charge if a rational jury could convict him only on the lesser-included offense after considering each of the alternative theories of commission." *Feldman v. State*, 71 S.W.3d 738, 752 (Tex. Crim. App. 2002) (op. on reh'g) (citing *Arevalo v. State*, 970 S.W.2d 547, 548-49 (Tex. Crim. App. 1998)). In other words, there must be some evidence negating the defendant's guilt under each theory of capital murder alleged in the indictment.

28. Thus, the Court finds that applicant's contention that he was entitled to a jury instruction on felony murder if there was evidence that neither he nor his codefendants intended to kill Officer Hawkins is not entirely accurate. Under the indictment in this case, the jury could still convict applicant of capital murder if it found that he, either as a principal or a party, *knowingly* killed the officer. (CR 2: 289-90).

29. Accordingly, the Court finds that applicant was not entitled to a jury instruction on felony murder unless there was some evidence that he and the other escapees did not act at least knowingly in causing Officer Hawkins's death.

30. The Court finds that applicant does not point to a single piece of evidence in the record showing that he and his cohorts were not at least aware that by unleashing a

hail of gunfire on Officer Hawkins as he sat, relatively defenseless, in his patrol car, they were reasonably certain to cause his death. *See* TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003) (defining "knowingly").

31. Indeed, the Court finds that the evidence shows nothing less than an intentional murder: the escapees ambushed the officer, shooting him eleven times with several different guns. (RR 47: 98-99, 119-20, 131, 139-40).

32. The Court finds, therefore, that no rational juror could find that at the moment they started shooting, it was not the escapees' conscious objective and desire to kill Officer Hawkins. *See* TEX. PENAL CODE ANN. § 6.03(a) (defining "intentionally"); *Salinas*, 163 S.W.3d at 741-42 (holding that the evidence did not raise any issue of felony murder when it showed that the defendant dragged the victim from the car and shot him in the head at close range with a shotgun); *Threadgill*, 146 S.W.3d at 665-66 (holding that there was no evidence that would permit a jury to rationally find that the defendant did not intend to cause the victim's death when he leaned into the car in which the victim was sitting and fired two shots); *Fuentes*, 991 S.W.2d at 273 (holding that there was no evidence that the defendant lacked intent to kill when he ran up to the victim, shot him twice in the chest, and fled as the victim fell into a ditch and died).

33. For the foregoing reasons, the Court finds and concludes that it properly denied applicant's request for a jury instruction on the lesser-included offense of felony murder. *See Feldman*, 71 S.W.3d at 752-53 (holding that the defendant was not entitled to an instruction on the lesser-included offense of murder because the

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 13 of 125   PageID 1803

evidence did not negate both alternative theories of capital murder alleged in the indictment).

34. The Court finds that applicant has failed to prove by a preponderance of the evidence that he was entitled — as a matter of due process, effective assistance of counsel, and the right to a fair and impartial jury — to a jury instruction on felony murder as a lesser-included offense of capital murder.

35. Accordingly, the Court concludes that applicant was not deprived of his federal constitutional rights by the lack of a jury instruction on felony murder. Applicant's first and fourth grounds for relief should be denied.

### STATE CONSTITUTIONAL CLAIMS

In his second and fifth grounds for relief, applicant contends that trial counsel's alleged failure to request a jury instruction on felony murder as a lesser-included offense of capital murder deprived him of his rights to due process, trial by an impartial jury, and effective assistance of counsel under article I, sections 3, 3A, 10, 13, 15, and 19 of the Texas Constitution.

### Applicant's Claims Are Procedurally Barred

36. The Court finds that, although he presents them as separate grounds for relief, applicant argues his state constitutional claims together with the federal constitutional claims asserted in grounds one and four. He does not contend that the two constitutions offer different levels of protection with respect to the rights at issue.

241

37. The Court notes that the proponent of a state constitutional claim must provide the reviewing court with some basis for the application of a constitutional test beyond that required for the federal constitutional analysis. *See Ex parte Anderson*, 902 S.W.2d 695, 701 (Tex. App.—Austin 1995, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993)). Accordingly, the Court of Criminal Appeals has repeatedly instructed that state and federal constitutional claims should be argued separately, and the proponent should explain why the state constitution affords him more protection in a particular area of the law than the federal constitution. *See, e.g., Lawton v. State*, 913 S.W.2d 542, 558 (Tex. Crim. App. 1995); *Muniz*, 851 S.W.2d at 251; *Heitman v. State*, 815 S.W.2d 681, 690 n.22 (Tex. Crim. App. 1991).

38. The Court finds that applicant has failed to properly present and argue his claims under the Texas Constitution.

39. Accordingly, the Court concludes that applicant's claims in grounds two and five have been procedurally defaulted and should not be addressed. *See Emery v. State*, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994) (holding that the defendant had failed to preserve his state constitutional claim for review because he presented no argument or authority as to why the Texas Constitution afforded him greater protection than the United States Constitution).

40. Moreover, the Court finds that, as with the federal constitutional claims raised in grounds one and four, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia.*

41.    The Court notes that habeas corpus may not be used to litigate claims that could have been brought on direct appeal. *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004).

42.    For this additional reason, the Court concludes that applicant's second and fifth grounds for relief are procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

43.    The Court finds that the Texas Constitution does not provide any greater protection than the United States Constitution with respect to the claims asserted by applicant.

44.    The Court notes that the Court of Criminal Appeals has specifically held that the Texas Constitution does not provide any greater protection than the federal constitution in the area of effective assistance of counsel. *See Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992).

45.    For the reasons discussed in connection with grounds one and four, therefore, the Court finds that applicant has failed to prove by a preponderance of the evidence that he was denied his rights to due process, an impartial jury trial, and effective assistance of counsel due to counsel's failure to request and to receive a jury instruction on the lesser-included offense of felony murder.

46.    The Court concludes that applicant suffered no such deprivation of his state constitutional rights. His second and fifth grounds for relief should be denied.

### *STATUTORY CLAIMS*

In his third and sixth grounds for relief, applicant maintains that counsel's alleged failure to request a jury instruction on felony murder as a lesser-included offense of capital murder deprived him of his rights to due process, an impartial jury trial, and effective assistance of counsel under articles 1.05, 1.051, 1.141, 26.04, 25.052, 36.14, and 36.15 of the Texas Code of Criminal Procedure.

### Applicant's Claims Are Not Cognizable

47.   The Court notes that a writ of habeas corpus may not be invoked for mere statutory irregularities in the proceedings below. *Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996). Habeas corpus relief is reserved for judicial defects in the trial court that render the judgment void and for denials of fundamental or constitutional rights. *Id.*

48.   The Court finds that applicant does not contend that the alleged statutory violations rendered this Court's judgment void.

49.   The Court concludes, therefore, that applicant's statutory claims in grounds three and six are not cognizable and should be summarily denied.

### Applicant's Claims Are Procedurally Barred

50.   The Court finds that, like his federal and state constitutional claims, applicant's statutory claims could have been, but were not, raised on direct appeal. *See Garcia.*

51.   The Court notes that habeas corpus may not be used to litigate matters that could have been raised on direct appeal. *Boyd*, 58 S.W.3d at 136.

52.     Accordingly, the Court concludes that applicant's claims in grounds three and six are procedurally barred and should not be addressed.

### Alternatively, Applicant's Claims Are Without Merit

53.     The Court finds that the Texas Code of Criminal Procedure does not give broader protection to applicant's rights to due process, an impartial jury trial, and effective assistance of counsel than do the federal and state constitutions. *See Hathorn*, 848 S.W.2d at 118 (holding that the Texas statutory provisions do not provide any greater protection than the federal constitution in the area of effective assistance of counsel).

54.     For the reasons discussed above in connection with grounds one, two, four, and five, the Court finds that applicant has failed to prove by a preponderance of the evidence that counsel's failure to request or to receive a jury instruction on felony murder violated his rights to due process, a fair jury trial, and effective assistance of counsel under the Texas Code of Criminal Procedure.

55.     The Court concludes that applicant suffered no such deprivation of his rights under the Texas Code of Criminal Procedure. Applicant's third and sixth grounds for relief should be denied.

### GROUNDS 7-8: BURDEN OF PROVING THE ABSENCE OF SUFFICIENT MITIGATING CIRCUMSTANCES

#### *FEDERAL CONSTITUTIONAL CLAIMS*

In his seventh ground for relief, applicant argues that, because it does not assign a burden of proof to the mitigation special issue, Texas's death-penalty scheme denies a

245

capital defendant due process of law and trial by an impartial jury, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and inflicts cruel and unusual punishment, in violation of the Eighth Amendment to the United State Constitution. He maintains that, pursuant to the decisions of the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Ring v. Arizona*, 536 U.S. 584 (2002); and *Blakely v. Washington*, 542 U.S. 296 (2004), the absence of sufficient mitigating circumstances is a fact legally essential to imposition of the death penalty that must be proved by the State beyond a reasonable doubt.

### Applicant's Claims Are Procedurally Barred

56.   The Court notes that claims that were raised and rejected on direct appeal may not be relitigated through habeas corpus. *Ramos*, 977 S.W.2d at 617; *Ex parte Drake*, 883 S.W.2d 213, 215-16 (Tex. Crim. App. 1994).

57.   The Court finds that, in his ninth point of error on direct appeal, applicant, relying on *Apprendi* and its progeny, argued that article 37.071 of the Texas Code of Criminal Procedure violated the Due Process Clause of the United States Constitution because it did not require the State to prove the absence of sufficient mitigating circumstances beyond a reasonable doubt. *See Garcia*, slip op. at 9-10. The Court of Criminal Appeals rejected applicant's argument. *Id.*

58.   The Court concludes that applicant is procedurally barred from raising his due process claim again on habeas review.

59.   Additionally, the Court finds that applicant's remaining federal constitutional claims in his seventh ground for relief could have been asserted on direct appeal, but were not. *See Garcia.*

60.   The Court notes that habeas corpus will not lie as a substitute for appeal. *Ramos,* 977 S.W.2d at 617.

61.   The Court concludes, therefore, that applicant's seventh ground for relief is procedurally barred in its entirety and should be summarily denied.

**Alternatively, Applicant's Claims Are Without Merit**

62.   The Court recognizes that, in *Apprendi* and *Ring,* the Supreme Court held that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Ring,* 536 U.S. at 600; *Apprendi,* 530 U.S. at 490.

63.   The Court notes, however, that the Court of Criminal Appeals has repeatedly rejected the argument that the holdings in *Apprendi* and *Ring* apply to Texas's mitigation special issue, reasoning that a jury's finding on the mitigation issue cannot increase the penalty for capital murder beyond the prescribed statutory maximum of death. *See, e.g., Rayford v. State,* 125 S.W.3d 521, 533-34 (Tex. Crim. App. 2003), *cert. denied,* 125 S. Ct. 39 (2004); *Blue v. State,* 125 S.W.3d 491, 501 (Tex. Crim. App. 2003), *cert. denied,* 125 S. Ct. 297 (2004). On the contrary, the mitigation issue is designed to allow for the imposition of life imprisonment — a sentence *less* than the statutory maximum. *See Rayford,* 125 S.W.3d at 534.

247

64.  While acknowledging these prior holdings, applicant maintains that the Supreme Court's more recent decision in *Blakely* calls them into question.  (Writ Application, p. 24).   In *Blakely*, the Supreme Court held that the statutory maximum sentence for *Apprendi* purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.  Applicant argues that, absent a negative finding on the mitigation special issue, the maximum sentence that may be imposed for capital murder is life imprisonment. (Writ Application, p. 26).

65.  The Court notes that the Court of Criminal Appeals has already rejected the suggestion that *Blakely* undercuts its prior decisions regarding the applicability of *Apprendi* to Texas's mitigation special issue. *See Perry v. State*, 158 S.W.3d 438, 446-48 (Tex. Crim. App. 2004); *Woods v. State*, 152 S.W.3d 105, 120-21 (Tex. Crim. App. 2004), *cert. denied*, 125 S. Ct. 2295 (2005).  In *Perry*, the Court of Criminal Appeals stressed the distinction, recognized in *Apprendi* and *Ring*, between "facts in aggravation of punishment and facts in mitigation," noting that the requirement of proof beyond a reasonable doubt applies only to the former. *Perry*, 158 S.W.3d at 448 (citing *Ring*, 536 U.S. at 609; *Apprendi*, 530 U.S. at 490 n.16).  The Court of Criminal Appeals held that "what a jury is asked to decide in the mitigation special issue is not a '[fact] legally essential to the punishment.' . . . By the time the jury reaches the mitigation special issue, the prosecution has proven all aggravating 'facts legally essential to the punishment.'" *Perry*, 158 S.W.3d at 448 (alteration in original) (quoting *Blakely*, 542 U.S. at 313).

243

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 21 of 125  PageID 1811

66.    The Court finds that article 37.071 requires the State to prove beyond a reasonable doubt — and the jury to find — every fact legally necessary for imposition of the death penalty.  This is all that *Apprendi* and its progeny require.  Once a death sentence is authorized by the jury's affirmative findings on the future-dangerousness and, if applicable, the anti-parties special issues, the mitigation special issue exists to give the jury an opportunity to reduce the defendant's sentence to life imprisonment.

67.    The Court finds that applicant has not proven by a preponderance of the evidence that Texas's death penalty scheme unconstitutionally omits a burden of proof on the mitigation special issue.

68.    The Court concludes, therefore, that the absence of a burden of proof for the mitigation special issue does not violate the United States Constitution. Applicant's seventh ground for relief should be denied.

## *STATE CONSTITUTIONAL CLAIMS*

In his eighth ground for relief, applicant contends that the absence of a burden of proof for the mitigation special issue denies a capital defendant due course of law and trial by an impartial jury, in violation of Article I, sections 10 and 19 of the Texas Constitution, and inflicts cruel and unusual punishment, in violation of Article I, section 13 of the Texas Constitution.

### Applicant's Claims Are Procedurally Barred

69.    The Court finds that, although he presents them as a separate ground for relief, applicant argues his state constitutional claims together with the federal

249

constitutional claims asserted in the previous ground. He does not contend that the two constitutions offer different levels of protection.

70. The Court notes that the proponent of a state constitutional claim must provide the reviewing court with some basis for the application of a constitutional test beyond that required for the federal constitutional analysis. *See Anderson*, 902 S.W.2d at 701. State and federal constitutional claims should be argued separately, and the proponent should explain why the state constitution affords him more protection in a particular area of the law than the federal constitution. *See, e.g., Lawton*, 913 S.W.2d at 558; *Muniz*, 851 S.W.2d at 251; *Heitman*, 815 S.W.2d at 690 n.22.

71. The Court finds that applicant has failed to properly present and argue his claims under the Texas Constitution.

72. Accordingly, the Court concludes that applicant's claims in his eighth ground for relief are procedurally barred and should not be addressed. *See Emery v. State*, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994) (holding that the defendant had failed to preserve his state constitutional claim for review because he presented no argument or authority as to why the Texas Constitution afforded him greater protection than the United States Constitution).

73. Moreover, the Court finds that applicant could have raised his state constitutional claims on direct appeal, but chose instead to rely solely on the federal constitution. *See Garcia*, slip op. at 9-10.

19

74. The Court notes that habeas corpus may not be used to litigate claims that could have been brought on direct appeal. *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004).

75. For this additional reason, the Court concludes that applicant's eighth ground for relief is procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

76. The Court finds that the Texas Constitution does not afford capital defendants any more protection than the United States Constitution with respect to requiring a burden of proof for the mitigation special issue.

77. For the reasons set forth in response to applicant's federal constitutional claims, the Court finds that applicant has failed to prove by a preponderance of the evidence that his state constitutional rights were violated by the absence of a burden of proof on mitigation.

78. Accordingly, the Court concludes that the absence of a burden of proof for the mitigation special issue does not offend the Texas Constitution. Applicant's eighth ground for relief should be denied.

### GROUNDS 9-10: ALLEGING "SPECIAL ISSUE ELEMENTS" IN CAPITAL MURDER INDICTMENTS

#### *FEDERAL CONSTITUTIONAL CLAIMS*

Relying again on *Apprendi*, applicant contends in his ninth ground for relief that he was denied his right to have the statutory special issues passed upon by a grand jury

251

and alleged in the indictment, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## Applicant's Claims Are Procedurally Barred

79.  The Court finds that applicant could have raised his federal constitutional claims on direct appeal, but did not. *See Garcia.*

80.  The Court notes that even constitutional claims are procedurally barred from consideration on habeas review if they could have been raised on appeal. *Townsend*, 137 S.W.3d at 81.

81.  Accordingly, the Court concludes that applicant's ninth ground for relief is procedurally barred and should not be addressed.

## Alternatively, Applicant's Claims Are Without Merit

82.  The Court notes that the Court of Criminal Appeals has rejected the argument that *Apprendi* requires the statutory special issues to be pleaded in the indictment. *See Threadgill*, 146 S.W.3d at 672; *Rayford*, 125 S.W.3d at 533. "A defendant indicted for capital murder is effectively put on notice that the special issues under Article 37.071 will be raised, so such procedural provisions need not be alleged in the indictment." *Moore v. State*, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998).

83.  The Court finds that applicant has failed to sustain his burden of proving by a preponderance of the evidence that he possessed a constitutional right to have the statutory special issues passed upon by a grand jury and alleged in the indictment.

232

84.  The Court concludes, therefore, that applicant did not have right under the United States Constitution to have the statutory special issues pleaded in the indictment. His ninth ground for relief should be denied.

### STATE CONSTITUTIONAL CLAIMS

In his tenth ground for relief, applicant asserts that the Texas Constitution — specifically, Article I, sections 3, 10, 13, and 19 — entitles him to an indictment charging the "special issue elements" of article 37.071.

### Applicant's Claims Are Procedurally Barred

85.  The Court finds that, once again, although he designates them as a separate ground for relief, applicant fails to provide any meaningful analysis distinguishing his state constitutional claims from the federal constitutional claims raised in his ninth ground. Applicant also fails to offer any reason for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution.

86.  Consequently, the Court concludes that applicant's state constitutional claims are procedurally barred and should not be addressed. *See Black v. State*, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000).

87.  In addition, the Court finds that, as with his federal claims, applicant could have brought his state constitutional claims on direct appeal. *See Garcia.*

88.  The Court notes that applicant may not use a writ of habeas corpus to litigate matters that he could have raised on direct appeal. *See Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991).

263

89.   For this additional reason, the Court concludes that applicant's tenth ground for relief is procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

90.   The Court finds that the Texas Constitution does not afford applicant any greater protection than the United States Constitution in this area of the law.

91.   For the reasons set forth in response to applicant's federal constitutional claims, therefore, the Court finds that applicant has failed to prove by a preponderance of the evidence that he possessed a right under the Texas Constitution to have the statutory special issues passed upon by a grand jury and alleged in the indictment.

92.   Thus, the Court concludes that the Texas Constitution does not guarantee applicant the right to have the special issues pleaded in the indictment.  Applicant's tenth ground for relief should be denied.

### GROUNDS 11-14: THE STATUTORY MITIGATION SPECIAL ISSUE AS AN ADEQUATE VEHICLE FOR GIVING EFFECT TO MITIGATING EVIDENCE

#### *FEDERAL CONSTITUTIONAL CLAIMS*

In his eleventh and thirteenth grounds for relief, applicant contends that the mitigation special issue under article 37.071, section 2(e) denies capital defendants due process of law and trial by an impartial jury, and that it subjects them to cruel and unusual punishment, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, "because it is a sentencing factor that fails to give full effect and consideration to mitigating circumstances and fails to provide the jury with an adequate vehicle for expressing a 'reasoned response' to all of applicant's evidence

relevant to his culpability."[1] (Writ Application, p. 30). He specifically argues that the statutory mitigation instruction given to the jury at the punishment phase of his trial contains the same defects as the "nullification instructions" found to be unconstitutional in *Smith v. Texas*, 543 U.S. 37 (2004), and *Penry v. Johnson*, 532 U.S. 782 (2001) ("*Penry II*").

### Applicant's Claims Are Procedurally Barred

93.  The Court finds that, although he could have, applicant did not raise these federal constitutional claims on direct appeal. *See Garcia.*

---

[1] Applicant's eleventh ground for relief states:

THE "NULLIFICATION INSTRUCTION" MANDATED IN ART. 37.071(e) TEX. CODE CRIM. PROC. DENIED APPLICANT DUE COURSE OF LAW, AN IMPARTIAL JURY AND IMPOSED CRUEL AND UNUSUAL PUNISHMENT BY VIOLATING THE PROVISIONS OF THE FIFTH, SIXTH, EIGHT[H] AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE IT IS A SENTENCING FACTOR WHICH FAILS TO GIVE FULL EFFECT AND CONSIDERATION TO MITIGATING CIRCUMSTANCES AND FAILS TO PROVIDE THE JURY WITH AN ADEQUATE VEHICLE FOR EXPRESSING A "REASONED RESPONSE" TO ALL OF APPLICANT"S EVIDENCE RELEVANT TO HIS CULPABILITY.

(Writ Application, pp. 29-30). His thirteenth ground for relief states:

*APPLICANT WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO A GRAND JURY DETERMINATION AND AN INDICTMENT THAT CHARGES THE "SPECIAL ISSUE ELEMENTS" OF THE DEATH PENALTY, AND FACTS RELIED UPON TO SUPPORT THE CHARGE THAT APPLICANT IS "GUILTY" OF THE SPECIAL ISSUES IN VIOLATION OF THE FIFTH, SIXTH, EIGHT[H], AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE ART. 37.071(e) IS A SENTENCING FACTOR WHICH FAILS TO GIVE FULL EFFECT AND CONSIDERATION TO MITIGATING CIRCUMSTANCES AND FAILS TO PROVIDE THE JURY WITH AN ADEQUATE VEHICLE FOR EXPRESSING A "REASONED RESPONSE" TO ALL OF APPLICANT'S EVIDENCE RELEVANT TO HIS CULPABILITY.*

(Writ Application, p. 30). [Emphasis added.] The portion of ground thirteen italicized above is a repeat of the claim raised in ground nine, discussed previously. (Writ Application, pp. 12-13). The latter portion is a repeat of the claim raised in applicant's eleventh ground. (Writ Application, pp. 29-30). Applicant does not explain — and the Court has been unable to determine — what the failure of the indictment to allege the special issues has to do with whether the mitigation special issue is an adequate vehicle for giving effect to mitigating evidence. Indeed, applicant does not even mention the indictment issue in his discussion of grounds eleven and thirteen. Accordingly, the Court refers the reader to its findings and conclusions with respect to applicant's ninth ground for relief for a discussion of applicant's claim concerning the indictment. The Court will otherwise treat grounds eleven and thirteen as raising identical claims.

94. The Court notes that habeas corpus will not lie as a substitute for appeal. *Ramos*, 977 S.W.2d at 616.

95. The Court concludes, therefore, that applicant's eleventh and thirteenth grounds for relief are procedurally barred and should not be addressed.

### Alternatively, Applicant's Claims Are Without Merit

96. The Court recognizes that, in *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989) (*"Penry I"*), the Supreme Court held that the version of article 37.071 then in effect was unconstitutional as applied because it failed to provide the jury with a means to give effect to mitigating evidence.[2]

97. In 1991, in order to comply with *Penry I*, the Texas Legislature revised article 37.071 to require that juries be instructed to "take[] into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant" in determining whether "there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." Act

---

[2] At the time, article 37.071(b) required that the following three special issues be submitted to the jury in a capital case:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 3, § 1, 1973 Tex. Gen. Laws 1122, 1125 (amended 1991) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(b) (Vernon Supp. 2005)). This version of article 37.071 is now codified under article 37.0711 and applies to the sentencing procedure for a capital offense committed before September 1, 1991. TEX. CODE CRIM. PROC. ANN. art. 37.0711, § 3(b) (Vernon Supp. 2005).

of May 17, 1991, 72nd Leg., R.S., ch. 838, § 1, art. 37.071(e) (amended 1999) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(e)(1) (Vernon Supp. 2005)). This current version of article 37.071 applies to capital offenses committed on or after September 1, 1991. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(i) (Vernon Supp. 2005).

98.   The Court finds that applicant's jury was given the mitigation instruction contained in the current version of article 37.071.[3] (CR 2: 303).

99.   The Court notes that this instruction has been upheld by the Court of Criminal Appeals as complying with the requirement of *Penry I* that capital juries be given a vehicle for expressing a "reasoned moral response" to mitigating evidence. *Penry I*, 492 U.S. at 328; *see Massey v. State*, 933 S.W.2d 141, 156 (Tex. Crim. App. 1996); *McFarland v. State*, 928 S.W.2d 482, 521 (Tex. Crim. App. 1996).

100.   Still, applicant claims that the current statutory mitigation instruction is indistinguishable from the constitutionally-defective "nullification" instructions given to capital juries in the immediate wake of *Penry I.*

101.   The Court notes that the 1989 *Penry I* decision created a dilemma for Texas trial courts in capital cases:   these courts "could not craft entirely new jury

---

[3] Specifically, the jury was instructed that if it had answered the first two special issues in the affirmative, it should proceed to answer the following special issue:

> Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

(CR 2: 303).

interrogatories, as the precise questions had been written by the state legislature. Nor could they suspend trials in anticipation of legislative remediation, as the legislature would not meet again until 1991 and its reaction was unknown." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5th Cir. 2003); *see also Ex parte Staley*, 160 S.W.3d 56, 58 (Tex. Crim. App. 2005). Thus, the courts attempted to conduct trials that complied with *Penry I* by drafting extra-statutory jury instructions or supplemental special issues. *Staley*, 160 S.W.3d at 58.

102.   One of these judicially-crafted, supplemental instructions was given to the sentencing jury at Penry's retrial. That instruction told the jury that it could consider mitigating circumstances in deliberating on the three statutory special issues and that if it determined that a life sentence, rather than a death sentence, was an appropriate response to Penry's "personal culpability," it should answer one of the special issues "no."[4] *Penry II*, 532 U.S. at 790.

103.   Once again, the Supreme Court reversed Penry's death sentence, holding that the supplemental instruction provided "an inadequate vehicle for the jury to make a reasoned moral response to Penry's mitigating evidence." *Id.* at 800. The Court reasoned that, depending on how it was interpreted, the instruction either (1) "shackled and confined" Penry's mitigating evidence within the scope of the three

---

[4] This methodology was intended to ensure that both *Penry I* and Texas statutory law were followed. *See Staley*, 160 S.W.3d at 60 n.7. Under then-existing Texas law, whether the defendant was sentenced to life imprisonment or death depended solely on the jury's answers to the three, statutorily-required special issues: if the jury answered all three special issues in the affirmative, then the trial judge was required to sentence the defendant to death. *See* Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 3, § 1, art. 37.071(e), 1973 Tex. Gen. Laws 1122, 1126 (amended 1981).

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 31 of 125   PageID 1821

statutory special issues, none of which was broad enough to provide a vehicle for the jury to give effect to this evidence; or (2) operated as a "nullification instruction," making the jury charge as a whole "internally inconsistent" and placing "law-abiding jurors in an impossible situation." *Id.* at 798-99. The Court explained that it would have been both "logically and ethically impossible" for the jury to answer the special issues in the manner prescribed on the verdict form while at the same time obeying the command of the supplemental instruction. *Id.* at 799-800.

104.   Thus, the Court held, the supplemental instruction "inserted 'an element of capriciousness' into the sentencing decision, 'making the jurors' power to avoid the death penalty dependent on their willingness' to elevate the supplemental instruction over the verdict form instructions." *Id.* at 800 (citations omitted). The Court observed, however, that a "clearly drafted catchall instruction on mitigating evidence . . . might have complied with *Penry I*" and pointed to Texas's newly-enacted statutory instruction as providing "a helpful frame of reference." *Id.* at 803. Noting its "brevity and clarity," the Court called the new statutory instruction an "adequate alternative[]" to the supplemental instruction given to Penry's jury. *Id.*

105.   The Court notes that the Supreme Court has recently confronted another extra-statutory supplemental instruction given to a Texas capital sentencing jury in the period of time between *Penry I* and the enactment of a statutory mitigation issue. *See Smith*, 543 U.S. at 306-313. The instruction in *Smith* told the jury that it could

28

233

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 32 of 125   PageID 1822

consider any evidence that it deemed mitigating, even if the evidence had no relationship to any of the statutory special issues. *Id.* at 308. If the jury believed that the death penalty was inappropriate due to the mitigating evidence, it was instructed to answer one of the special issues "no" in order to give effect to this belief. *Id.*

106.    While acknowledging that this instruction was not identical to the one at issue in *Penry II*, the *Smith* Court held that the distinctions between the two instructions were "constitutionally insignificant." *Id.* at 312. The Court explained that the instruction given to Smith's jury did not resolve the ethical problem identified in *Penry II*: the jury was still "essentially instructed to return a false answer to a special issue in order to avoid a death sentence." *Id.* at 313 (citing *Penry II*, 532 U.S. at 801).

107.    Applicant contends there is no principled distinction, for Eighth Amendment purposes, between the statutory mitigation instruction given to the jury in his case and the instructions found to be constitutionally defective in *Penry II* and *Smith*. Specifically, he argues that the statutory instruction inserts the same "element of capriciousness" into the sentencing decision because the jury has already been instructed to consider mitigating evidence in deliberating on the future-dangerousness and anti-parties special issues, and, by answering these two special issues in the affirmative, has already determined that a death sentence is appropriate before even reaching the mitigation special issue. Thus, he reasons,

260

the jurors must effectively reverse their answers to the first two special issues if they are to answer the mitigation special issue "yes." (Writ Application, p. 59).

108. The Court finds that applicant's arguments reflect a misunderstanding of the *Penry II* and *Smith* decisions.

109. The Court notes that in *Penry II*, the Supreme Court observed that "the key under *Penry I* is that the jury be able to 'consider and give effect to [a defendant's mitigating] evidence in imposing sentence.'" *Penry II*, 532 U.S. at 797 (quoting *Penry I*, 492 U.S. at 319). The instructions in *Penry II* and *Smith* were constitutionally infirm because the only way the jury could give effect to mitigating evidence was through its answers to the statutory special issues, none of which were broad enough to encompass all of evidence relevant to the defendant's culpability. *Smith*, 543 U.S. at 312; *Penry II*, 532 U.S. at 796. Thus, in order to give effect to mitigating evidence that did not fit within the scope of the special issues, jurors would have to ignore the verdict-form instructions and answer one of the special issues falsely, thereby violating their oath. *See Smith*, 543 U.S. 313; *Penry II*, 532 U.S. at 799.

110. The Court finds that, as part of its verdict, the jury in this case was required to make a determination, separate and apart from its answers to the first two special issues, of whether there were sufficient mitigating circumstances to warrant a life sentence instead of the death penalty. (CR 2: 303). Thus, the jury was able to give full effect to any evidence that had mitigating relevance beyond the scope of the first two special issues.

261

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 34 of 125  PageID 1824

111.  Additionally, the Court finds that, contrary to applicant's contentions, the jury was not required to effectively negate its answers to the first two special issues in order to give mitigating effect to such evidence. The jury could still, even after having answered the first two special issues in the affirmative, determine that the death penalty was inappropriate because there was sufficient evidence mitigating applicant's personal moral culpability.

112.  The Court finds, therefore, that statutory mitigation instruction given in this case permitted applicant's jury "to give effect to mitigating evidence in every conceivable manner in which the evidence might be relevant." *Perry*, 158 S.W.3d at 448-49.

113.  Furthermore, the Court notes that the Court of Criminal Appeals has specifically held that Texas's statutory mitigation special issue satisfies the constitutional requirement that a capital sentencing jury be provided with an adequate vehicle for expressing a reasoned moral response to all of the evidence relevant to the defendant's culpability. *See Woods*, 152 S.W.3d at 121; *Hall v. State*, 67 S.W.3d 870, 877 (Tex. Crim. App. 2002), *vacated on other grounds by Hall v. Texas*, 537 U.S. 802 (2002). Nothing in either *Penry II* or *Smith* has altered this conclusion, especially in view of the language in *Penry II* giving tacit approval to the statutory instruction.

114.  For the foregoing reasons, the Court finds that applicant has failed to prove by a preponderance of the evidence that the mitigation special issue under article

262

37.071, section 2(e) is a constitutionally inadequate vehicle for giving effect to mitigating evidence.

115. The Court therefore concludes that the mitigation special issue does not violate the United States Constitution. Applicant's eleventh and thirteenth grounds for relief should be denied.

### STATE CONSTITUTIONAL CLAIMS

In his twelfth and fourteenth grounds for relief, applicant contends that the statutory mitigation issue denies capital defendants due course of law and trial by an impartial jury and subjects them to cruel and unusual punishment, in violation of Article I, sections 10, 13, and 19 of the Texas Constitution, for the same reasons asserted in support of his federal constitutional claims in grounds eleven and thirteen.[5]

### Applicant's Claims Are Procedurally Barred

116. The Court finds that applicant relies solely on federal constitutional authority and does not argue that the state constitution provides a greater level of protection than the federal constitution in this area of the law.

117. Accordingly, the Court concludes that applicant's state constitutional claims are procedurally barred and should be summarily denied. *See Black*, 26 S.W.3d at 896 n.4.

---

[5] Like his thirteenth ground, applicant's fourteenth ground also makes an assertion about the indictment that appears to have no connection to his complaint concerning the mitigation special issue. (Writ Application, pp. 30-31). Applicant raised his state constitutional claim regarding the indictment in his tenth ground for relief, discussed previously. (Writ Application, p. 13). Accordingly, as it did with ground thirteen, the Court refers the reader to its previous discussion of the indictment issue and will otherwise treat grounds twelve and fourteen as raising identical claims.

203

118.   Moreover, the Court finds that, as with his federal claims, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia.*

119.   For this additional reason, the Court concludes that applicant's twelfth and fourteenth grounds for relief are procedurally barred and should not be addressed. *See Townsend,* 137 S.W.3d at 81.

### Alternatively, Applicant's Claims Are Without Merit

120.   The Court finds that the Texas Constitution affords capital defendants no greater protection than the United States Constitution with respect to requiring that juries be provided with an adequate vehicle for giving effect to mitigating evidence.

121.   Accordingly, for the reasons set forth in response to applicant's federal constitutional claims, the Court finds that applicant has not carried his burden of proving by a preponderance of the evidence that the mitigation special issue deprived him of his state constitutional rights to due course of law and trial by an impartial jury, and subjected him to cruel and unusual punishment.

122.   Accordingly, the Court concludes that applicant suffered no such deprivation of his rights under the Texas Constitution.   Applicant's twelfth and fourteenth grounds for relief should be denied.

### GROUNDS 15-18: UNANIMITY OF VERDICT

### *FEDERAL CONSTITUTIONAL CLAIMS*

In his fifteenth ground for relief, applicant contends that this Court "allowed a non-unanimous verdict when [it] submitted disjunctive means of committing capital murder" and thereby deprived him of his rights to due process, an impartial jury verdict,

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 37 of 125  PageID 1827

and freedom from cruel and unusual punishment, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (Writ Application, p. 60). In his seventeenth ground for relief, applicant contends that trial counsel's failure to object to the jury charge on this basis constituted ineffective assistance of counsel under the United States Constitution.[6]

### Applicant's Claims Are Procedurally Barred

123. The Court finds that applicant did not raise any of these claims on direct appeal, although nothing prevented him from doing so. *See Garcia.*

124. The Court finds that applicant does not rely on any new evidence or law that was not available to him on direct appeal.

125. The Court notes that habeas corpus may not be used to litigate matters that could have been raised on appeal. *See Boyd,* 58 S.W.3d at 136.

126. The Court further notes that an applicant is barred from challenging the effectiveness of trial counsel for the first time of habeas review when, as here, he has failed to utilize the habeas process to develop additional evidence to support his claim. *See Nailor,* 149 S.W.3d at 131-32.

---

[6] Grounds fifteen through eighteen refer to the "party 'conspiracy' instruction" under Penal Code section 7.02(b) as permitting a non-unanimous verdict. (Writ Application, pp. 60-61). Once again, there seems to be discrepancy between what applicant lists as his grounds for relief and what he actually argues. Applicant does not specifically discuss the relationship, if any, between the conspiracy instruction and the unanimity of the jury's verdict. Instead, what he appears to be arguing is that there was a potential for a non-unanimous verdict because two theories of capital murder were submitted to the jury: murder of a peace officer and murder committed in the course of a robbery. (CR 2: 282-83; Writ Application, pp. 70-71, 75). *See* TEX. PENAL CODE ANN. § 19.03(a)(1)-(2). For instance, he maintains that "the disjunctive allegations in the application paragraphs gave rise to an equivalent 'umbrella' crime because the crimes were two distinct crimes, one of murder in the course of robbery and one the murder of a police officer." (Writ Application, p. 75). Thus, the Court has interpreted grounds for relief fifteen through eighteen as a challenge to the submission of alternative theories of capital murder under section 19.03 and not as a challenge to the submission of alternative theories of parties liability under section 7.02.

127. The Court concludes, therefore, that applicant's fifteenth and seventeenth grounds for relief are procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

*The jury charge did not allow for a non-unanimous verdict.*

128. The Court finds that the indictment in this case alleged that applicant committed the offense of capital murder by (1) knowingly and intentionally causing the death of Aubrey Hawkins, a peace officer acting in the lawful discharge of an official duty, by shooting him with a firearm; and (2) intentionally causing the death of Aubrey Hawkins by shooting him with a firearm while applicant was in the course of committing and attempting to commit the offense of robbery. (CR 1: 2). *See* TEX. PENAL CODE ANN. § 19.03(a)(1)-(2).

129. The Court finds that the charge authorized the jury to find applicant guilty of capital murder if it concluded beyond a reasonable doubt that he — as a principal, a party, or a co-conspirator — caused Officer Hawkins's death under either of the two theories alleged in the indictment.[7] (CR 2: 289-92).

---

[7] Thus, the jury charge contained six separate application paragraphs, instructing the jury to find applicant guilty of capital murder if it believed that he

(1) intentionally or knowingly caused the death of Aubrey Hawkins, a peace officer;

(2) with the intent to promote or assist the commission of the offense of murder, solicited, encouraged, directed, aided, or attempted to aid any one or combination of the other six escapees in intentionally or knowingly causing the death of Aubrey Hawkins, a peace officer;

(3) entered into a conspiracy with one or more of the other six escapees to commit the offense of robbery, and in the attempt to carry out this conspiracy, one or more of the other escapees intentionally or knowingly caused the death of Aubrey Hawkins, a peace officer, and intentionally or knowingly causing the death of Aubrey Hawkins was committed in furtherance of the unlawful purpose to commit robbery and should have been anticipated as a result of carrying out the conspiracy to commit robbery, whether or not applicant intended to cause the death of Aubrey Hawkins;

256

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 39 of 125 PageID 1829

130. The Court finds that the jury was not instructed that it had to unanimously agree on any one particular theory.

131. The Court finds that the jury returned a general verdict, finding applicant guilty of capital murder "as charged in the indictment." (CR 2: 295).

132. The Court recognizes that a jury must be unanimous as to what specific statutory criminal act the defendant has committed. *See Ngo v. State*, No. PD-0504-04, 2005 Tex. Crim. App. LEXIS 457, at *14-15 (Mar. 16, 2005).

133. Accordingly, the Court observes that when an indictment charges the defendant with committing separate criminal acts — even if those acts constitute violations of the same statutory provision — the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of the charged criminal acts. *Id.* at *11.

134. But the Court also recognizes that a trial court does not err simply by submitting the separate offenses to the jury in the disjunctive; error lies "in failing to instruct

---

(4) intentionally caused the death of Aubrey Hawkins while in the course of committing or attempting to commit the offense of robbery;

(5) with the intent to promote or assist the commission of the offense of murder, solicited, encouraged, directed, aided, or attempted to aid any one or combination of the other six escapees in intentionally causing the death of Aubrey Hawkins in the course of the commission or attempted commission of the offense of robbery; or

(6) entered into a conspiracy with one or more of the other six escapees to commit the felony offense of robbery, and in the attempt to carry out this conspiracy, one or more of the other escapees intentionally caused the death of Aubrey Hawkins, and intentionally causing the death of Aubrey Hawkins was committed in furtherance of the unlawful purpose to commit robbery and should have been anticipated as a result of carrying out the conspiracy to commit robbery, whether or not applicant intended to cause the death of Aubrey Hawkins.

(CR: 2: 289-91).

257

the jury that it must be unanimous in deciding which one (or more) of the . . . disjunctively submitted offenses it found [the defendant] committed." *Id.* at *24. Nor does a trial court necessarily err by allowing the jury to return a general verdict in this situation: "it does not matter which criminal act . . . the jury found [the defendant] had committed as long as each juror agreed on the same criminal act." *Id.* at *25.

135.   Furthermore, the Court notes that a jury need not agree on the preliminary factual issues that underlie its verdict. *See id.* at *16; *Kitchens v. State*, 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991) (citing *Schad v. Arizona*, 501 U.S. 624, 632 (1991)). In other words, the jury must unanimously agree on *what* criminal act the defendant committed, but not on *how* the defendant committed that act. "The crucial distinction is thus between a fact that is a specific *actus reus* element of the crime and one that is 'but the means' to the commission of a specific actus reus element." *Ngo*, 2005 Tex. Crim. App. LEXIS 457, at *18 (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999)).

136.   The Court observes that, in addressing a complaint that a disjunctive jury charge permitted a non-unanimous verdict, the reviewing court should first determine whether the separate application paragraphs contain different criminal acts or whether they merely instruct as to different means of committing the same criminal act. *See Holford v. State*, No. 01-04-00195-CR, 2005 Tex. App. LEXIS 3602, at *14 (Houston [1st Dist.] May 12, 2005, pet. ref'd) (citing *Ngo*, 2005 Tex. Crim. App. LEXIS 457, at *15-16).

268

137. In making this determination, "[a] handy, though not definitive, rule of thumb is to look to the statutory verb defining the criminal act. That verb . . . is generally the criminal act upon which all jurors must unanimously agree." *Ngo*, 2005 Tex. Crim. App. LEXIS 457, at *15 n.24.

138. The Court notes that the Court of Criminal Appeals has held that when an indictment charges different theories under which a defendant committed a single capital murder, the jury need not agree on which theory has been proven. *See Kitchens*, 823 S.W.2d at 258; *see also Hathorn v. State*, 848 S.W.2d 101, 113 (Tex. Crim. App. 1992) (holding that an indictment charging the defendant with committing a single capital murder under different subsections of section 19.03 alleged only one offense); *Bethany v. State*, 152 S.W.2d 660, 669 (Tex. App.— Texarkana 2004, pet. ref'd) (holding that the jury was not required to agree on whether the defendant killed the victim for remuneration or in the course of committing a robbery in order to convict him of capital murder); *cf. Graham v. State*, 19 S.W.3d 851, 854 (Tex. Crim. App. 2000) (holding that a capital murder indictment charging the defendant with murdering victims A and B during the same criminal transaction, murdering victim A during the course of a robbery, and murdering victim C during the course of a robbery alleged two distinct capital murder offenses, not simply three alternative theories for one offense).

139. Thus, the Court finds that capital murder is not, as applicant contends, an "umbrella" crime, under which any one of several distinct criminal acts would suffice for conviction. *Schad*, 501 U.S. at 650 (Scalia, J., concurring). The actus

269

reus of capital murder is murder, regardless of how the offense is alleged to have been committed.

140.   The Court finds that applicant was charged with committing a single criminal act: the murder of Aubrey Hawkins. In order to convict, therefore, the jury had to unanimously agree that applicant was criminally responsible for causing Officer Hawkins's death. The jury did not, however, have to agree on which of the two aggravating factors alleged in the indictment — that Officer Hawkins was a peace officer or that he was intentionally killed in the course of a robbery — elevated the act of causing Officer Hawkins's death to a capital murder.

141.   The Court finds that even if half the jury found applicant guilty of the murder of a peace officer while the other half found him guilty of murder in the course of robbery, the jury still unanimously convicted applicant of the same single, specific criminal act — the capital murder of Officer Hawkins.

142.   Accordingly, the Court finds and concludes that, because applicant was charged with committing a single criminal act, this Court did not err in submitting the different theories of capital murder in the disjunctive and not requiring the jury to unanimously agree on one specific theory. *See, e.g., Schad*, 501 U.S. at 632 (holding that the jury was not required to agree on whether the defendant murdered the victim "with premeditation or in the course of committing a robbery"); *Aguirre v. State*, 732 S.W.2d 320, 324-27 (Tex. Crim. App. 1987) (op. on reh'g) (holding that where the indictment charged the defendant with intentionally causing the victim's death and with causing the victim's death during

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 43 of 125  PageID 1833

the course of committing a felony, intentional murder and felony murder were not different offenses, but merely different ways of committing the same murder); *cf. Ngo*, 2005 Tex. Crim. App. LEXIS 457, at *25 (holding that where the defendant was charged with three separate acts of credit-card abuse in a single indictment, the jury was required to unanimously agree on which of these three acts the defendant committed); *Francis v. State*, 36 S.W.3d 121, 123-25 (Tex. Crim. App. 2000) (holding that where the defendant was charged with two distinct acts of indecency with a child, which occurred at different times and dates, the jury was required to agree on the same act for conviction).

143.    For the foregoing reasons, the Court finds that applicant has failed to prove by a preponderance of the evidence that the jury charge allowed a non-unanimous verdict and thereby violated his rights under the United States Constitution to due process, an impartial jury verdict, and freedom from cruel and unusual punishment.

144.    The Court finds that the jury charge did not permit a non-unanimous verdict.

145.    The Court concludes, therefore, that the jury charge did not deprive applicant of his federal constitutional rights.. His fifteenth ground for relief should be denied.

### Applicant was not harmed by the submission of disjunctive means of committing capital murder without a requirement of unanimity.

146.    The Court notes that when federal constitutional error that is subject to a harm analysis is raised on habeas, the applicant bears the burden of proving by a preponderance of the evidence that the alleged error actually contributed to his

271

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 44 of 125   PageID 1834

conviction or punishment. *Ex parte Fierro*, 934 S.W.2d 370, 374-75 (Tex. Crim. App. 1996).

147. The Court finds that it was not contested at trial that Officer Hawkins was intentionally killed during the course of a robbery and while he was in the lawful discharge of his official duties as a peace officer. (RR 50: 19-39). The only issue contested at trial was the degree of applicant's involvement in, and responsibility for, the officer's murder. (RR 50: 26-27, 32-39).

148. Thus, the Court finds that a juror could not have believed that applicant was guilty of committing a murder in the course of a robbery, but was not guilty of murdering a peace officer, or vice versa.

149. The Court finds that there was, therefore, no real possibility of a non-unanimous verdict in this case. *Cf. Ngo*, 2005 Tex. Crim. App. LEXIS 457, at *33-34 (holding that the defendant was harmed by the trial court's failure to instruct the jury that it must be unanimous in deciding which one of the three disjunctively-submitted offenses it found the defendant had committed, where the defendant testified and denied committing any of the three offenses and where two of the offenses were mutually exclusive).

150. The Court finds that applicant has failed to prove by a preponderance of the evidence that the absence of a instruction requiring unanimity as to which of the two theories of capital murder the jury found from the evidence actually contributed to his conviction or punishment.

272

151. Accordingly, the Court concludes that applicant was not harmed by the absence of a jury instruction requiring unanimity as to which type of capital murder he committed. For this additional reason, applicant's fifteenth ground for relief should be denied.

### *Applicant was not denied effective assistance of counsel.*

152. The Court notes that to establish ineffective assistance of counsel, applicant must prove by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objection standard of reasonableness, and (2) a probability sufficient to undermine confidence in the outcome exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Thompson*, 9 S.W.3d at 812.

153. The Court further notes that counsel cannot be labeled ineffective for failing to lodge a meritless objection. *See, e.g., Ladd*, 3 S.W.3d at 565 (holding that counsel did not render ineffective assistance when he failed to object to the definition of "conspiracy" contained in the jury charge because that definition was not erroneous).

154. Thus, to show that counsel was ineffective for failing to object to the jury charge, applicant must show that this Court would have erred in overruling the objection. *See White*, 160 S.W.3d at 53 (citing *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)). The success of applicant's ineffective-assistance complaint is therefore contingent on the merits of his challenge to the jury charge.

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 46 of 125 PageID 1836

155. For the reasons discussed in relation to ground fifteen, the Court concludes that applicant's contention that the jury charge allowed for a non-unanimous verdict is without merit.

156. The Court finds that applicant has failed to prove by a preponderance of the evidence that counsel was deficient for not objecting to the jury charge on this basis.

157. Accordingly, the Court concludes that applicant was not denied his right to effective assistance of counsel under the United States Constitution.

158. Moreover, the Court finds that, absent any evidence of the rationale behind counsel's failure to object, applicant fails to defeat the strong presumption that counsel's actions fell within the wide range of reasonable, professional assistance. *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To defeat this presumption, applicant must prove that there was, in fact, no plausible, professional reason for the failure to object. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

159. The Court further recognizes that the Court of Criminal Appeals has made it clear that trial counsel should ordinarily be accorded an opportunity to explain his actions before his performance is scrutinized for constitutional competence. *See id.*; *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

160. The Court finds that the trial record is silent as to why counsel did not object to the charge. Furthermore, the Court finds that applicant has not provided this Court with any extrinsic evidence of counsel's reasoning.

43

274

161. Accordingly, the Court finds that applicant has failed to rebut the presumption that counsel's decision not to object to the jury charge on the grounds that it allowed a non-unanimous verdict constituted reasonable assistance.

162. The Court concludes, therefore, that counsel was not ineffective under the federal constitution .

163. Additionally, the Court finds that applicant has not proven by a preponderance of the evidence that trial counsel's decision not to object to the jury charge on this basis prejudiced his defense.

164. The Court finds it highly unlikely that, given the evidence in this case, the jury was divided on whether Officer Hawkins was killed in the lawful discharge of his official duties as a peace officer or whether he was killed during a robbery.

165. Thus, the Court finds that applicant has not proven by a preponderance of the evidence that a probability sufficient to undermine confidence in the outcome exists that had unanimity been required as to the specific manner and means of committing the offense, he would not have been convicted of the capital murder of Officer Hawkins. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812.

166. For the foregoing reasons, the Court finds that applicant has not met his burden of establishing ineffective assistance of counsel under the United States Constitution.

167. The Court concludes, therefore, that counsel was not ineffective. Applicant's seventeenth ground for relief should be denied.

275

## STATE CONSTITUTIONAL CLAIMS

In his sixteenth ground for relief, applicant contends that this Court's submission of disjunctive means of committing capital murder in the jury charge allowed a non-unanimous verdict and thereby deprived him of his rights under article I, sections 10, 13, and 19 of the Texas Constitution to due course of law, an impartial jury verdict, and freedom from cruel and unusual punishment. In his eighteenth ground for relief, applicant contends that trial counsel's failure to object to the jury charge on this basis constituted ineffective assistance of counsel under the Texas Constitution.

### Applicant's Claims Are Procedurally Barred

168. The Court finds that applicant relies solely on federal constitutional authority and does not argue that the state constitution provides a greater level of protection than the federal constitution in this area of the law.

169. Accordingly, the Court concludes that applicant's state constitutional claims are procedurally barred and should be summarily denied. *See Black*, 26 S.W.3d at 896 n.4.

170. Moreover, the Court finds that, as with his federal claims, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia.*

171. For this additional reason, the Court concludes that applicant's sixteenth and eighteenth grounds for relief are procedurally barred and should not be addressed. *See Townsend*, 137 S.W.3d at 81.

276

## Alternatively, Applicant's Claims Are Without Merit

172. The Court finds that the Texas Constitution affords applicant no greater protection than the United States Constitution in this area of the law.

173. The Court finds that applicant has failed to prove by a preponderance of the evidence that the submission of disjunctive means of committing capital murder in the jury charge allowed for a non-unanimous verdict, thereby depriving him of his state constitutional rights to due course of law, an impartial jury verdict, and freedom from cruel and unusual punishment.

174. For the reasons discussed in connection with ground fifteen, the Court finds that the jury charge did not permit a non-unanimous verdict.

175. Accordingly, the court concludes that applicant suffered no deprivation of his state constitutional rights. His sixteenth ground for relief should be denied.

176. The Court also finds that applicant has failed to prove by a preponderance of the evidence that trial counsel's failure to object to the jury charge as allowing a non-unanimous verdict constituted deficient performance and prejudiced his defense.

177. For the reasons discussion in connection with ground seventeen, the Court finds that counsel was not deficient for not objecting to the jury charge on this basis and that applicant's defense was not prejudiced.

178. The Court concludes, therefore, that applicant was not deprived of his right to effective assistance of counsel under the Texas Constitution. His eighteenth ground for relief should be denied.

277

### GROUNDS 19-20: CONSPIRACY INSTRUCTION

#### *FEDERAL CONSTITUTIONAL CLAIMS*

In his nineteenth ground for relief, applicant contends that this Court erred in instructing the jury on co-conspirator liability under section 7.02(b) of the Texas Penal Code.[8] (CR 2: 287). He argues that this instruction "allowed a lesser burden of proof of intent to secure a conviction for capital murder" and thereby violated his rights under the United States Constitution to due process, trial by an impartial jury, and freedom from cruel and unusual punishment.

#### Applicant's Claims Are Procedurally Barred

179.    The Court finds that applicant failed to raise his challenge to the conspiracy instruction on direct appeal. *See Garcia*.

180.    The Court notes that habeas corpus may not be used as a substitute for appeal. *See Nelson*, 137 S.W.3d at 667.

181.    Accordingly, the Court concludes that applicant's nineteenth ground for relief is procedurally barred and should not be addressed.

#### Alternatively, Applicant's Claims Are Without Merit

182.    The Court observes that although section 7.02(b) allows a defendant to be held criminally responsible for the conduct of another — thereby eliminating the

---

[8] This statute provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b) (Vernon 2003).

278

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 51 of 125 PageID 1841

necessity for proving intent to commit the felony actually committed — it does not excuse the State altogether from proving a culpable mental state. *Gravis v. State*, 982 S.W.2d 933, 938 (Tex. App.—Austin 1998, pet. ref'd).

183. In fact, the statute requires the State to prove that the defendant had both the mens rea to engage in a conspiracy and the culpable mental state to commit the underlying felony. *Id.* The mental state required for the underlying felony supplies the mens rea for the felony that resulted from the conspiracy. *Id.*; *accord Cienfuegos v. State*, 113 S.W.3d 481, 493-94 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). This "transference of the mental element establishing criminal responsibility for the original act to the resulting act conforms to and preserves the traditional mens rea requirement of the criminal law." *Rodriquez*, 548 S.W.2d at 29.

184. Furthermore, the Court notes that the Court of Criminal Appeals has held that Texas's capital-punishment scheme does not unconstitutionally allow an individual to be put to death for merely being a party to a murder. *See Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992).

185. When a jury was permitted to find the defendant guilty of capital murder as a party under section 7.02, the death penalty may be assessed only if the jury determines that the defendant "actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken." TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(b)(2). This ensures that a capital defendant convicted as a party or co-

conspirator will not be sentenced to death unless he is found to bear personal moral culpability for the victim's death. *See Prystash v. State*, 3 S.W.3d 522, 540 (Tex. Crim. App. 1999).

186. The Court finds that applicant's jury was given this "anti-parties" special issue instruction in the charge. (CR 2: 302).

187. Accordingly, the Court finds that applicant has failed to prove by a preponderance of the evidence that the conspiracy instruction given to the jury in this case deprived him of due process and an impartial jury verdict and subjected him to cruel and unusual punishment under the United States Constitution.

188. For the foregoing reasons, the Court concludes the conspiracy instruction it gave the jury in this case did not violate applicant's federal constitutional rights. Applicant's nineteenth ground for relief should therefore be denied.

### STATE CONSTITUTIONAL CLAIMS

In his twentieth ground for relief, applicant maintains that the conspiracy instruction given to the jury in this case violated his rights to due course of law, an impartial jury verdict, and freedom from cruel and unusual punishment under Article I, sections 10, 13, and 19 of the Texas Constitution for the same reasons asserted in support of his federal constitutional claims in ground nineteen.

### Applicant's Claims Are Procedurally Barred

189. The Court finds that applicant relies solely on federal constitutional authority and does not argue that the state constitution provides a greater level of protection than the federal constitution in this area of the law.

190. Accordingly, the Court concludes that applicant's state constitutional claims are procedurally barred and should be summarily denied. *See Black*, 26 S.W.3d at 896 n.4.

191. Moreover, the Court finds that, as with his federal claims, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia.*

192. For this additional reason, the Court concludes that applicant's twentieth ground for relief is procedurally barred and should not be addressed. *See Townsend*, 137 S.W.3d at 81.

### Alternatively, Applicant's Claims Are Without Merit

193. The Court finds that the Texas Constitution does not afford applicant any greater protection than the United States Constitution with respect to the claims made.

194. The Court finds that applicant has failed to prove by a preponderance of the evidence that his rights under the Texas Constitution to due course of law, an impartial jury verdict, and freedom from cruel and unusual punishment were violated by the inclusion of a conspiracy instruction in the jury charge.

195. For the reasons discussed in connection with ground nineteen, the Court concludes that the conspiracy instruction given to the jury in this case did not violate applicant's state constitutional rights. His twentieth ground for relief should be denied.

## GROUNDS 21-22:  INFERRED-INTENT INSTRUCTION

### *FEDERAL CONSTITUTIONAL CLAIMS*

In his twenty-first ground for relief, applicant contends that this Court erred in instructing the jury at the guilt phase of his trial that "[i]ntent may be inferred from the surrounding facts and circumstances including but not limited to acts done and words spoken." (CR 2: 286).  He argues that this instruction constituted an improper comment on the weight of the evidence, in violation his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### Applicant's Claims Are Procedurally Barred

196.   The Court finds that applicant could have raised these complaints about the jury charge on direct appeal, but did not. *See Garcia.*

197.   The Court notes that habeas corpus may not be used to litigate claims that could have been raised on appeal. *See Nelson*, 137 S.W.3d at 667.

198.   Consequently, the Court concludes that ground twenty-one is procedurally barred and should not be addressed.

### Alternatively, Applicant's Claims Are Without Merit

199.   The Court acknowledges that the Court of Criminal Appeals has held that a trial court's instructing the jury that it may infer intent from acts done and words spoken "marginally falls on the wrong side of the 'improper-judicial-comment' scale because it is simply unnecessary and fails to clarify the law for the jury." *Brown v. State*, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003).

232

200. The Court of Criminal Appeals has also held, however, that such an instruction is "mild, neutral, and an obvious common-sense proposition" and is "not, in any sense, harmful under *Almanza*." *Id.* at 803-04.

201. The Court finds that the impact of the inferred-intent instruction given in this case was likewise negligible and not harmful to applicant.

202. The Court finds that applicant has failed to prove by a preponderance of the evidence that he was harmed by the inclusion of an inferred-intent instruction in the jury charge. *See Fierro*, 934 S.W.2d at 374-75.

203. Accordingly, the Court concludes that inferred-intent instruction given to the jury in this case did not deprive applicant of his rights under the United States Constitution . His twenty-first ground for relief should be denied.

### STATE CONSTITUTIONAL CLAIMS

In his twenty-second ground for relief, applicant contends that the inclusion of an inferred-intent instruction in the jury charge violated his rights under Article I, sections 10, 13, and 19 of the Texas Constitution for the same reasons asserted in support of his federal constitutional claims in ground twenty-one.

### Applicant's Claims Are Procedurally Barred

204. The Court finds that applicant argues his state constitutional claims together with the federal claims asserted in the previous ground.  Applicant does not contend that the two constitutions offer different levels of protection.

205.   Accordingly, the Court concludes that applicant's state constitutional claims are procedurally barred and should be summarily denied. *See Black*, 26 S.W.3d at 896 n.4.

206.   Moreover, as with his federal constitutional claims on this issue, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia*.

207.   For this additional reason, the Court concludes that applicant's twenty-second ground for relief is procedurally barred and should not be addressed. *See Townsend*, 137 S.W.3d at 81.

### Alternatively, Applicant's Claims Are Without Merit

208.   The Court finds that the Texas Constitution affords no greater protection in this area of the law than the United States Constitution.

209.   For the reasons discussed above in connection with ground twenty-one, the Court finds that applicant has failed to prove by a preponderance of the evidence that the inclusion of an inferred-intent instruction in the jury charge violated his rights under the Texas Constitution.

210.   Accordingly, the Court concludes that applicant suffered no deprivation of his state constitutional rights. His twenty-second ground for relief should be denied.

### GROUNDS 23-24: "FAIR CROSS SECTION" CHALLENGE

#### *FEDERAL CONSTITUTIONAL CLAIMS*

In his twenty-third ground for relief, applicant contends that trial counsel rendered ineffective assistance under both the United States Constitution by failing to challenge

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 57 of 125   PageID 1847

the composition of the venire. Applicant maintains that Hispanics and persons eighteen to thirty-four years of age are demonstrably underrepresented on jury panels in Dallas County.

### Applicant's Claims Are Procedurally Barred

211. The Court finds that applicant relies exclusively on the trial record to substantiate his complaints about trial counsel's performance.

212. Thus, the Court finds that applicant could have raised these complaints on direct appeal, although he did not. *See Garcia*; *Nailor*, 149 S.W.3d at 131-32.

213. The Court concludes that applicant has forfeited his claims. *See Townsend*, 137 S.W.3d at 81. Applicant's twenty-third ground for relief is procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

214. The Court recognizes that the Sixth Amendment to the United States Constitution guarantees the right of an accused to a "speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. An essential component of this Sixth Amendment guarantee is the requirement that the venire from which a petit jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528-29 (1975).

215. The Court notes that in order to establish a prima facie violation of this fair-cross-section requirement, a defendant must show that (1) the group allegedly excluded is a "distinctive group" within the community; (2) the group is not fairly

represented on venires from which juries are selected; and (3) this underrepresentation results from systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

216.   The Court further notes that a habeas applicant has the burden of proving his factual allegations by a preponderance of the evidence. *Ex parte Adams*, 768 S.W.2d 281, 287-88 (Tex. Crim. App. 1989).

### *While Hispanics are a distinctive group in the community, eighteen- to thirty-four-year-olds are not.*

217.   The Court concludes that Hispanics are a distinctive group in Dallas County. *See Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996).

218.   The Court has not, however, found any authority for the proposition that a particular age group may be a distinctive group for *Duren* purposes.

219.   Indeed, the Court notes that appellate courts have consistently refused to classify age groups as "distinctive" under *Duren*. *See Johnson v. McCaughtry*, 92 F.3d 585, 592-93 (7th Cir. 1996) (rejecting ages 18-25 as a distinctive group and noting that age-based claims under *Duren* "have been rejected in every circuit that has considered them"); *Brewer v. Nix*, 963 F.2d 1111, 1113 (8th Cir. 1992) (rejecting ages 65 and older as a distinctive group); *Wysinger v. Davis*, 886 F.2d 295, 296 (11th Cir. 1989) (rejecting ages 18-25 as a distinctive group); *Ford v. Seabold*, 841 F.2d 677, 682 (6th Cir. 1988) (rejecting ages 18-29 as a distinctive group); *Barber v. Ponte*, 772 F.2d 982, 998 (1st Cir. 1985) (op. on reh'g en banc) (rejecting ages

18-34 as a distinctive group); *Weaver v. State*, 823 S.W.2d 371, 373 (Tex. Crim. App. 1992) (rejecting ages 65 and older as a distinctive group).

220. Furthermore, the Court finds that applicant has not provided any evidence to suggest that eighteen- to thirty-four-year-olds, in particular, share similar attitudes, values, ideas, and experiences that make them distinct from other age groups.

221. The Court finds, therefore, that applicant has not demonstrated that persons eighteen to thirty-four years of age comprise a distinctive group in the community.

222. Accordingly, with respect to this age group, the Court concludes that applicant has failed to meet the first prong of the *Duren* test. *See Barber*, 772 F.2d at 998; *see also Weaver*, 823 S.W.2d at 373 (rejecting *Duren* claim with respect to persons over 65 years of age where the defendant "offered no evidence to suggest that some common thread of shared experience or political, social, or religious viewpoint binds this group together to make it distinct from any other age group").

### *Applicant has not proven that Hispanics and persons eighteen to thirty-four years of age are underrepresented on Dallas County venires.*

223. The Court notes that the second prong of *Duren* requires applicant to show that the number of Hispanics and persons eighteen to thirty-four years of age on Dallas County venires is not fair and reasonable in relation to the number of those individuals in Dallas County who are qualified for the jury-selection process. *See Pondexter v. State*, 942 S.W.2d 577, 580-81 (Tex. Crim. App. 1996).

224. The Court observes that, in *Pondexter*, the defendant claimed the trial court had violated the Sixth Amendment by refusing to dismiss the array after he presented

undisputed evidence that African-Americans made up twenty-two percent of the county's population but less than ten percent of the panel of prospective jurors. 942 S.W.2d at 580.

225.  In response, the Court of Criminal Appeals observed that, on its face, the difference between the number of African-Americans in the county and the number on the venire might arguably raise an inference of unfairness or unreasonableness. *Id.* The Court overruled the defendant's complaint, however, because he had not shown that the percentage of African-Americans who *qualified* for the jury-selection process was the same as or similar to the total percentage of African-Americans in the population. *Id.* at 580-81; *accord United States v. Brummitt,* 665 F.2d 521, 529 (5th Cir. 1981) ("[T]o establish the prima facie case of a denial of a fair cross-section, the disparity between the proportion of members of an identifiable class on a jury list must be based not on total population but, instead, on those of the identifiable class who are eligible to serve as jurors.").

226.  The Court finds that applicant has the same problem proving his fair-cross-section claim as did the defendant in *Pondexter.*

227.  The Court notes that applicant claims to rely on statistics extracted from a 2000 *Dallas Morning News* article comparing the percentage of Hispanics and persons eighteen to thirty-four years of age in the population as a whole to the percentage of these groups in the Dallas County jury pool.

228.  As an initial matter, the Court concludes that the mere citation of a newspaper article to this Court does not suffice to introduce into evidence the truth of the

258

hearsay or so-called scientific conclusions contained within the article. *See Ramdass v. Angelone*, 530 U.S. 156, 172 (2000).

229.    Additionally, even if it were to assume the accuracy of applicant's statistics, the Court finds that he has presented no evidence showing what percentage of Hispanics and eighteen- to thirty-four-year-olds are actually *qualified* to participate in the jury-selection process.

230.    Thus, the Court finds that applicant has not shown that the representation of these two groups on Dallas County venires is not fairly and reasonably related to the number of such persons in the community who are qualified to sit on a jury.

231.    The Court finds that applicant has not proven by a preponderance of the evidence that Hispanics and people between the ages of eighteen and thirty-four are unfairly represented on jury panels in Dallas County.

232.    The Court concludes, therefore, that applicant has failed to satisfy the second prong of the *Duren* test.

**Applicant has not proven that Hispanics and persons eighteen to thirty-four years of age are systematically excluded from the jury-selection process.**

233.    The Court notes that the third prong of *Duren* requires applicant to show that the alleged underrepresentation of these groups on jury panels is inherent in the jury-selection process used in Dallas County. *Duren*, 439 U.S. at 366. Specifically, applicant must identify a particular systematic defect or operational deficiency that accounts for the alleged underrepresentation. *See United States v. Pion*, 25 F.3d 18, 23 (1st Cir. 1994).

234.  The Court recognizes that because some people are simply less available than others to serve as jurors, a true cross-section is practically unobtainable. *Barber*, 772 F.2d at 997. Thus, the Supreme Court has never required that a venire be, statistically, a substantially true mirror of the community. *Id.* "[C]ourts have tended to allow a fair degree of leeway in designating jurors so long as the state or community does not *actively* prevent people from serving or actively discriminate, and so long as the system is reasonably open to all." *Id.*

235.  The Court notes that affirmative barriers to selection for jury service or different selection standards for different groups are hallmarks of a Sixth Amendment violation. In *Taylor*, for example, the Supreme Court held that a Louisiana statute that prevented a woman from being selected for jury service unless she had previously filed a written declaration of her desire to be subject to jury service violated the fair-cross-section requirement. 419 U.S. at 523, 531. And in *Lacy v. State*, the Tyler Court of Appeals suggested that systematic exclusion could be established by showing that distinctive groups "were not included in the computer base from which the panel was selected." 899 S.W.2d 284, 288 (Tex. App.—Tyler 1995, no pet.).

236.  The Court finds that, in Texas, the names on the jury wheel in each county are selected from the names of all persons on the current voter-registration lists and the names of all citizens who have a valid Texas driver's license or identification card. *See* TEX. GOV'T CODE ANN. § 62.001 (Vernon Supp. 2005).

290

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 63 of 125 PageID 1853

237. The Court notes that this method of selection has been repeatedly upheld against Sixth Amendment attack. *See, e.g., United States v. James*, 528 F.2d 999, 1022 (5th Cir. 1976) (upholding the use of voter registration lists as the *sole* source of potential jurors).

238. The Court finds that no person, by reason of their membership in either of the distinctive groups at issue here, is prevented by law from registering to vote or from obtaining a driver's license or state identification card.

239. Moreover, the Court concludes that the failure of individual group members to avail themselves of these privileges "in the same proportion as was their share in the overall population" does not constitute systematic exclusion under *Duren*. *United States v. Cecil*, 836 F.2d 1431, 1448 (4th Cir. 1988); *see also Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) ("[T]he fact that an identifiable minority group votes in a proportion lower than the rest of the population and is therefore underrepresented on jury panels presents no constitutional issue.").

240. Thus, the Court finds that applicant has failed to produce any evidence that Dallas County's jury-selection process systematically excludes Hispanics and persons eighteen to thirty-four years of age.

241. In fact, the Court perceives applicant's real complaint as directed toward what happens *after* summonses are mailed to potential jurors. Applicant claims that a disproportionate number of Hispanics and people between the ages of eighteen and thirty-four ignore jury summonses. He blames this failure to obey jury summonses on Dallas County policies, suggesting that the low pay for jury

291

service, coupled with the failure of Dallas County officials to enforce jury summonses, results, as a practical matter, in the underrepresentation of Hispanics and eighteen- to thirty-four-year-olds in the jury pool.

242. The Court finds applicant's assertion that low juror pay in Dallas County and the failure to enforce summonses cause Hispanics and young adults to shirk jury duty in disproportionate numbers to be pure speculation. Apart from referencing newspaper and law review articles, the Court finds that applicant does not point to any evidence that the amount of pay or the lack of consequences for failing to report are the reasons why these groups do not report.

243. The Court finds that there could be any number of personal reasons, wholly unrelated to county policies, for the failure to report.

244. The Court further finds that everyone summoned for jury duty in the criminal courts of Dallas County, regardless of age or ethnicity, receives the same pay and suffers the same consequences for failing to report.

245. The Court concludes, therefore, that the system is "reasonably open to all." *Barber*, 772 F.2d at 997. The personal decision of a particular individual to ignore a jury summons cannot be attributed to a constitutional defect in the jury-selection process itself. More importantly, the Court concludes, any discrepancies resulting from such private-sector influences do not violate the fair-cross-section requirement.

246. The Court concludes that applicant has failed to satisfy the third prong of the *Duren* test by demonstrating that the allegedly distinctive and underrepresented

groups are systematically excluded from the jury-selection process in Dallas County. Accordingly, applicant has not established a prima facie violation of the Sixth Amendment's fair-cross-section requirement.

247.   The Court finds that applicant has failed to prove by a preponderance of the evidence that the venire in his case did not represent a fair cross-section of the community.

248.   The Court concludes, therefore, that applicant's Sixth Amendment right to a jury drawn from a fair cross-section of the community was not violated.

### Counsel was not ineffective for failing to make a meritless objection.

249.   The Court notes that when a defendant claims that counsel was ineffective for failing to object or to preserve error on some issue, the defendant must show that the underlying issue has merit. *See White*, 160 S.W.3d at 53.

250.   Thus, the Court observes that in order to succeed on the ineffective-assistance-of-counsel claims he makes in his twenty-third ground for relief, applicant has to demonstrate that this Court would have erred in overruling a *Duren* objection to the composition of the venire.

251.   The Court finds that applicant has failed in this burden because, as discussed above, he has not shown that the venire in his case did not represent a fair cross-section of the community. *See Luckette v. State*, 906 S.W.2d 663, 667 (Tex. App.—Amarillo 1995, pet. ref'd).

252.   Thus, the Court finds that a fair-cross-section complaint would have been meritless.

233

253. The Court concludes that counsel was deficient for failing to lodge a meritless Sixth Amendment objection. *See Vaughn*, 931 S.W.2d at 566-67.

254. Additionally, the Court finds that applicant has not presented any evidence of counsel's reasons for not raising a fair-cross-section challenge to the venire and has not, therefore, defeated the strong presumption that counsel's actions fell within the wide range of reasonable, professional assistance.

255. Thus, the Court finds that applicant has failed to sustain his burden of proving by a preponderance of the evidence that trial counsel's decision not to challenge the venire on Sixth Amendment grounds constituted ineffective assistance.

256. Consequently, the Court concludes that counsel's decision not to raise a fair-cross-section claim did not violate applicant's right under the United States Constitution to effective assistance of counsel. Applicant's twenty-third ground for relief should be denied.

### STATE CONSTITUTIONAL CLAIMS

In his twenty-fourth ground for relief, applicant contends that trial counsel's failure to object to the racial composition of the venire constituted ineffective assistance of counsel under Article I, section 10 of the Texas Constitution.

### Applicant's Claims Are Procedurally Barred

257. The Court finds that applicant has not provided any reason for construing the Texas Constitution as providing more protection in this area of the law than the United States Constitution.

234

258. Accordingly, the Court concludes that applicant's state constitutional claims are procedurally barred and should not be addressed. *See Black*, 26 S.W.3d at 896 n.4.

259. Moreover, as with his federal constitutional claims, applicant could have raised his state constitutional claims on direct appeal, but did not. *See Garcia.*

260. For this additional reason, the Court concludes that applicant's twenty-fourth ground for relief is procedurally barred and should not be addressed. *See Townsend*, 137 S.W.3d at 81.

### Alternatively, Applicant's Claims Are Without Merit

261. The Court notes that the Court of Criminal Appeals has specifically held that the Texas Constitution does not provide any greater protection than the federal constitution in the area of effective assistance of counsel. *See Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992).

262. The Court finds, therefore, that the Texas Constitution provides applicant no greater protection than the United States Constitution in this area of the law.

263. Thus, for the reasons discussed in connection with applicant's federal claims, the Court finds that applicant has failed to prove by a preponderance of the evidence that trial counsel's decision not to raise a fair-cross-section challenge to the venire constituted ineffective assistance of counsel under the Texas Constitution.

264. The Court concludes that counsel's decision not to raise a fair-cross-section challenge did not violate applicant's state constitutional right to effective assistance of counsel.

235

## GROUNDS 25-38: DENIAL OF CHALLENGES FOR CAUSE

In grounds for relief twenty-five through thirty-eight, applicant contends that this Court violated his rights to due process and effective assistance of counsel under the federal and state constitutions by denying his challenges for cause to prospective jurors Ama Helfenbein, Thomas Tucker, Larry Carroll, Gregory Babineau, Lillian Lyles, Alan Lucien, and Robin Tucker. He argues that each of these prospective jurors possessed some bias against the law that prevented them from being fair and impartial. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (Vernon Supp. 2005).

### Applicant's Claims Are Not Cognizable

265.   The Court notes that a writ of habeas corpus is available only for relief from jurisdictional defects and violations of constitutional or fundamental rights. *Ex parte McCain*, 67 S.W.3d 204, 207 (Tex. Crim. App. 2002). Procedural errors or statutory violations may be reversible error on direct appeal, but they are not "fundamental" or "constitutional" errors that require relief on a writ of habeas corpus. *Id.* at 209-10; *see also Sanchez*, 918 S.W.2d at 527 (holding that the violation of a state statute in general is not a cognizable claim on habeas corpus); *Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002) (holding that "[v]iolations of statutes, rules, or other non-constitutional doctrines are not recognized" on habeas corpus).

266.   The Court concludes that the erroneous denial of a challenge for cause under article 35.16 of the Texas Code of Criminal Procedure is statutory — not

constitutional — error.[9] *See Johnson v. State*, 43 S.W.3d 1, 2, 4 (Tex. Crim. App. 2001) ("Harm for the erroneous denial of a challenge for cause is determined by the standard in Rule of Appellate Procedure 44.2(b).").  The right at issue is the defendant's statutory right to "an unbridled use of the number of peremptory challenges given." *Johnson*, 43 S.W.3d at 8 (Keller, P.J., concurring); *see* TEX. CODE CRIM. PROC. ANN. art. 35.14 (Vernon 1989), art. 35.15 (Vernon Supp. 2004-05); *see also Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("We have long recognized that peremptory challenges are not of constitutional dimension.").  This unbridled right is violated when the defendant is forced to use a peremptory challenge on a prospective juror who should have been removed for cause and, as a result, is required to accept a different juror who is objectionable to him. *Johnson*, 43 S.W.3d at 8.

267.  The Court finds that applicant has alleged nothing more than statutory violations with respect to the denial of his challenges for cause.  These claimed statutory violations did not deprive this Court of jurisdiction or deny applicant any fundamental or constitutional rights and are not, therefore, proper grounds for habeas relief.

268.  Accordingly, the Court concludes that grounds for relief twenty-five through thirty-eight are not cognizable and should be summarily denied. *See Ex parte*

---

[9] In support of his argument that the erroneous denial of his challenges for cause violated his constitutional rights, applicant relies on caselaw concerning the improper exclusion — through the granting of a prosecution challenge for cause — of a prospective juror who expresses opposition to the death penalty. (Writ Application, pp. 100-26). *See, e.g., Witherspoon v. Illinois*, 391 U.S. 510 (1968). The Court concludes that such caselaw is irrelevant to applicant's claims, none of which allege that a prospective juror was erroneously removed for cause by the prosecution.

*Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (op. on reh'g) (holding contention that trial court erred in granting challenge for cause to prospective juror because of bias under article 35.16 was not a cognizable claim on habeas corpus).

### FEDERAL CONSTITUTIONAL CLAIMS

### Applicant's Claims Are Procedurally Barred

269. The Court finds that applicant complained on direct appeal about the denial of his challenges for cause to these same seven prospective jurors. *See Garcia*, slip op. at 2-7. The Court of Criminal Appeals rejected applicant's complaints, holding that this Court did not abuse its discretion in denying applicant's challenges. *Id.*, slip op. at 7.

270. The Court finds that applicant does not raise any new or different arguments to contest this Court's rulings. Instead, he merely reasserts, usually verbatim, the arguments he made in his brief on direct appeal.

271. The Court notes that claims that have already been raised and rejected on direct appeal may not be relitigated through habeas corpus. *Ramos*, 977 S.W.2d at 617.

272. Thus, the Court concludes that applicant's federal constitutional claims in grounds twenty-five, twenty-seven, twenty-nine, thirty-one, thirty-three, thirty-five, and thirty-seven are procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claims Are Without Merit

***Applicant has failed to prove that the challenged jurors were biased against the law.***

273. The Court recognizes that the defense may challenge for cause a prospective juror who has a bias or prejudice against any of the law applicable to the case upon

293

which the defense is entitled to rely. TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2). A "bias against the law" is a refusal to consider or apply the relevant law. *Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998). Bias exists when certain beliefs or opinions would prevent or substantially impair a prospective juror from carrying out the duties of a juror in accordance with the law. *Id.* A challenge for cause may also be made to a prospective juror who exhibits a bias or prejudice against the defendant. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9).

### *Ama Helfenbein*

In his twenty-fifth ground for relief, applicant contends that prospective juror Ama Helfenbein should have been struck for cause because she (1) would answer the anti-parties special issue "yes" if the State proved that applicant conspired to commit an offense, knowing that one or more of his co-conspirators would be armed; and (2) could not consider the five-year minimum sentence for the lesser-included offense of murder. (RR 8: 154-55).

*Helfenbein did not have a bias against the law concerning the anti-parties special issue.*

274. The Court finds that, under examination by the State, Helfenbein said she would answer the anti-parties special issue according to what the evidence revealed about applicant's involvement in the murder. (RR 8: 106-09, 114). She agreed to "[k]eep [her] mind open" and listen to all the evidence. (RR 8: 126). Later, defense counsel questioned Helfenbein concerning her understanding of actual

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 72 of 125   PageID 1862

anticipation under the second special issue by posing several hypothetical scenarios:

Q. [DEFENSE COUNSEL]     Let me ask you another question regarding Special Issue No. 2. You see down there that it says that one of the ways you can get death is if you anticipate that a human life would be taken. [The prosecutor] talked to you about the people going in the bank vault. Two people go in, two people come out, and there's a bunch of dead bodies. That situation could be pretty cut and dried to some people.

But it could be kind of a conundrum for other people, because you don't know what went on in the bank vault, except that the people died, you know. And his example, you don't know who killed them. You don't know if one guy says, hey, quit shooting, you know, don't kill these people. I'm not, you know, I didn't buy into this, you know, please quit. You know, they may have attacked each other or whatever. So you don't know, other than the fact that two go in and none of the victims come out.

Do you still think that it would be that easy to decide life or death in that situation?

A. [PROSPECTIVE JUROR]     I didn't say it would be easy. But the chances are, if two people go in and a room full of people are killed, one could have done something to stop part of that.

Q.     Well, in [the prosecutor's] example, there's only one pistol.

A.     Uh-huh.

Q.     And attacking somebody with a pistol when you can see that he's killing people may not be something that would lead to your longevity, either, as you can well imagine. The other thing is, it says anticipated that a human life would be taken.

What if you and I drive to this store and you know that I'm going to go in and rob it. And you say, look, don't hurt anybody. Just go in and bring back the money and we'll split it up. But don't hurt anybody. Is that anticipating that a human life would be taken?

A.     They are going to go in and carry out a robbery with a gun in hand?

390

Q.    No. But I'm talking about you sitting in the car and you say, look, don't hurt anybody.

A.    I'd have to be some kind of stupid.

Q.    Well, we're not—but all I'm asking you is, would that be enough to show that you anticipated that a human life could be taken? Because see, what you're doing is, you're telling the person who commits the murder definitely not to do that. However, you can see that by your very act of saying, don't hurt anybody, that you may be anticipating that a human life would be taken. See where I'm coming from?

A.    I see where you are coming from, but that's almost like telling a young child don't do it. So you have got to have some type of anticipating in that situation.

Q.    Could there never be, in your mind, could there never be a way that you wouldn't anticipate that a human life would be taken if you participated in some sort of criminal activity where somebody was armed with a firearm?

A.    I rarely say never because you have to leave yourself some margin.

Q.    I understand that. But in your way of thinking, if, going back to [the prosecutor's] example, or any other example, if there's more than one person and one person is armed, would the other people always be in some anticipation that a human life would be taken?

A.    Yes.

Q.    Okay. Simply because they were aware that that one person was armed and could, would, always have the potential to kill someone?

A.    Yes, because the potential would exist.

Q.    And so that in and of itself would answer that part of Special Issue No. 2, in your mind, yes; is that correct?

A.    Yes.

Q.    In other words, that would always be a situation where the person should have anticipated that would happen?

301

A.    Yes.

. . . .

Q.    Well, let's take another aspect of that.  I doubt you thought you would come down here for a criminal law course.  A conspiracy is—let's go back to the bank robbery or whatever.

Conspiracy is where two people agree to produce a certain crime, to rob the bank.  And going back to the example of the bank vault.  They agreed to drive up there and to rob the bank.  That's their conspiracy.  And then something else happens, i.e., the murder, while they're conspiring to rob the bank.

Would that—would you always find in that situation that they should have anticipated that event to have occurred?

A.    If they go in with a gun in hand, there's always an anticipation that somebody will get shot.

Q.    So if the State were able to prove that one or more of the participants in a conspiracy or a joint enterprise were armed, Special Issue No. 2 would be answered yes in your mind?

A.    Yes.

(RR 8: 149-153).

275.   As a threshold matter, the Court finds that applicant did not contend at trial that Helfenbein was challengeable for cause because she would answer the anti-parties special issue "yes" based on evidence that applicant participated in an offense involving weapons.  (RR 8: 154-55).

276.   Accordingly, the Court concludes that applicant is procedurally barred from advancing this complaint on habeas review.  *See Ex parte Pena*, 71 S.W.3d 336, 337 (Tex. Crim. App. 2002) (holding that the rules regarding preservation of error apply on habeas review); *see also Mooney v. State*, 817 S.W.2d 693, 703 (Tex.

302

Crim. App. 1991) (holding that a defendant could not contend on appeal that a juror was unqualified because he had been exposed to outside information about the case, where the challenge for cause at trial was limited to the juror's testimony concerning the definitions of the terms "intentional" and "deliberate").

277. Moreover, the Court concludes that even if applicant had presented such a complaint, this Court would not have abused its discretion in rejecting it.

278. As the Court of Criminal Appeals noted in its opinion on direct appeal, the record does not indicate that any distinction was made during voir dire between the law of party liability in the guilt phase of trial and the law governing the anti-parties issue at punishment. *See Garcia*, slip op. at 5.

279. The Court notes that, while a jury's finding of guilt will in some cases be the functional equivalent of an affirmative answer to the anti-parties special issue, this is not always so. A defendant may be found guilty of capital murder under a parties theory without meeting the requirements for an affirmative answer to the anti-parties punishment issue. *Id.*, slip op. at 5-6 (citing *Valle v. State*, 109 S.W.3d 500, 503-04 (Tex. Crim. App. 2003)).

280. The Court finds that applicant has not met his burden of showing that Helfenbein understood the requirements of the law, but could not overcome her prejudice well enough to follow it. *Id.*, slip op. at 6.

281. Furthermore, the Court finds that applicant has not proven by a preponderance of the evidence that Helfenbein's views would have substantially impaired her ability to carry out her oath and instructions in accordance with the law. Applicant cites

72

303

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 76 of 125   PageID 1866

no authority for the proposition that a prospective juror is challengeable for cause because she would infer actual anticipation under the anti-parties special issue from the defendant's involvement in an armed criminal endeavor.

282. The Court concludes that applicant's dissatisfaction with the way in which Helfenbein defined proof beyond a reasonable doubt of actual anticipation did not require Helfenbein's removal for cause. *See Castillo v. State*, 913 S.W.2d 529, 534 (Tex. Crim. App. 1995) ("This Court has repeatedly held the fact that a person is armed when entering the area of a crime or while committing a crime is itself of probative value in proving deliberate conduct.").

283. The Court further concludes that, to the extent applicant's complaint is that Helfenbein should have been struck for cause because she would "automatically" answer the anti-parties special issue "yes," it is likewise without merit.

284. The Court recognizes that the defense may challenge for cause a prospective juror who would automatically answer the first or second special issue "yes" after finding the defendant guilty. *See Feldman*, 71 S.W.3d at 745. In other words, a prospective juror who professes an inability to reconsider guilt evidence in the particular context of the special issues has demonstrated a bias against the law. *See Gardner v. State*, 730 S.W.2d 675, 680 (Tex. Crim. App. 1987). The critical determination to be made is whether the challenged juror would answer the special issues based on the evidence presented, rather than merely relying on the earlier finding of guilt. *Pierce v. State*, 777 S.W.2d 399, 404 (Tex. Crim. App. 1989).

354

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 77 of 125  PageID 1867

285. The Court finds that Helfenbein never said she would automatically answer the anti-parties issue "yes" after finding applicant guilty. To the contrary, her responses indicated that she could reconsider the evidence of guilt within the context of the second special issue's requirement of actual anticipation. *See id.* at 412 (holding that the trial court did not err in denying a challenge for cause to a prospective juror whose answers indicated that she would base her answer to the future-dangerousness special issue on an examination of the evidence, even though neither the prosecution nor defense counsel could provide a hypothetical situation in which she would answer the future-dangerousness special issue "no").

286. Moreover, the Court finds that even if Helfenbein's remarks to defense counsel suggested that she would automatically answer the anti-parties special issue "yes," they conflicted with her initial assurances to the State that she would first consider all the evidence. (RR 8: 114, 126). *See Feldman*, 71 S.W.3d at 744; *see also Wolfe v. State*, 917 S.W.2d 270, 276 (Tex. Crim. App. 1996) (holding that an appellate court must defer to the trial court's ruling on a challenge for cause when the record supports both the ability and inability of the prospective juror to follow the law); *Banda v. State*, 890 S.W.2d 42, 58 (Tex. Crim. App. 1994) (holding that the trial court did not abuse its discretion in denying a challenge for cause where, although some of the prospective juror's testimony indicated that he would presume "yes" answers to the special issues, the record contained sufficient evidence to the contrary to support the trial court's ruling).

3.5

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 78 of 125  PageID 1868

287.  The Court finds that applicant has failed to prove by a preponderance of the evidence that Helfenbein was biased against the law with respect to the anti-parties special issue.

288.  The Court finds that Hefenbein held no such bias.

*Helfenbein did not have a bias against the law concerning the minimum punishment for murder.*

289.  The Court finds that when questioned by the State, Helfenbein said she could keep an open mind and make a punishment decision based on the evidence.  (RR 8: 124).  To the defense, however, Helfenbein said she "doubt[ed]" she could assess a five-year sentence after having found someone guilty of murder.  (RR 8: 147-48).  She also said that, if she were the "queen of Texas," the minimum sentence for murder would be thirty years' imprisonment.  (RR 8: 148-49).

290.  The Court recognizes that a prospective juror who is unable to consider the full punishment range for any offense of which the defendant may be convicted possesses a bias against the law.  *Ladd*, 3 S.W.3d at 559.  But a prospective juror is not biased simply because she cannot immediately envision a scenario in which the minimum punishment would be appropriate.  *Id.*  The crucial consideration is whether the prospective juror could keep an open mind until she has heard all the evidence.  *Johnson v. State*, 982 S.W.2d 403, 405-06 (Tex. Crim. App. 1998).

291.  The Court finds that Helfenbein's statement that she "doubt[ed]" she could assess a five-year sentence could have been reasonably interpreted to mean that she simply could not, at that moment, envision a situation in which she might find the

minimum punishment appropriate. That Helfenbein could not imagine such a situation during voir dire, however, does not necessarily mean that she could not assess the minimum punishment if an appropriate scenario presented itself at trial. *See Ladd*, 3 S.W.3d at 559; *see also Williams v. State*, 773 S.W.2d 525, 537 (Tex. Crim. App. 1988) (holding that the trial court did not err in denying a challenge for cause based on an inability to consider five years for the lesser-included offense of murder, where the prospective juror only said that he did not "think" he could consider five years).

292.    Additionally, the Court observes that there is a distinction between a prospective juror who has a bias or prejudice against the law and one who is merely entertaining an opinion. *Penry v. State*, 903 S.W.2d 715, 728 (Tex. Crim. App. 1995). Thus, Helfenbein's personal belief that the minimum punishment for murder should be much higher does not automatically translate into an inability or unwillingness to follow the law as it currently stands.

293.    The Court finds that applicant has failed to carry his burden of proving by a preponderance of the evidence that Helfenbein was biased against the law concerning the statutory minimum punishment for murder.

294.    The Court finds that Helfenbein held no such bias.

### *Thomas Tucker*

In his twenty-seventh ground for relief, applicant contends that prospective juror Thomas Tucker should have been struck for cause because he believed that a person who had already committed one murder would always be a continuing threat to society,

307

thereby relieving the State of its burden to prove future dangerousness beyond a reasonable doubt.

295. The Court finds that, under questioning by the State, Tucker said he would follow this Court's instructions and the law and would answer each of the special issues according to the evidence. (RR 9: 111-12). He said he understood it was the State's burden to prove that the future-dangerousness special issue should be answered "yes" and he could answer this issue either "yes" or "no" depending on the evidence. (RR 9: 128-30). He also said that he "may be predisposed" toward believing that somebody guilty of capital murder would be "willing to do it again":

> If I have found the individual to be guilty, in my mind, that tells me that there will always be a probability, regardless if you were run over by a bus and you are now a quadriplegic. In my mind there's still a probability that you may at some time in the future be capable of committing another criminal act that might constitute a threat to society.

(RR 9: 130, 133).

296. The Court finds that further questioning by the State revealed that Tucker was equating a "probability" under the future-dangerousness special issue with a "possibility." (RR 9: 133). After the prosecutor explained that a "probability" meant more than a mere "possibility" or "chance," Tucker said he could follow the law and listen to the evidence before deciding the future-dangerousness issue. (RR 9: 133-35).

297. The Court finds that during his examination by the defense, Tucker confirmed that "[d]eep down," he believed that a convicted capital murderer would probably

3ᴜ8

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 81 of 125 PageID 1871

commit violent criminal acts in the future. (RR 9: 147-48). Still, he maintained that while he may be inclined to think such a probability existed, he would not automatically answer the future-dangerousness special issue "yes." (RR 9: 148-49). Additionally, upon questioning by this Court, Tucker said he would hold the State to its burden of proof on this issue. (RR 9: 170).

298. The Court finds that applicant has failed to prove by a preponderance of the evidence that Tucker's views would have substantially impaired his ability to carry out his oath and instructions in accordance with the law. *See Garcia*, slip op. at 7.

299. The Court notes that once a prospective juror demonstrates he can set aside his personal feelings and follow the trial court's instructions, he is not disqualified as a matter of law. *Kemp v. State*, 846 S.W.2d 289, 298 (Tex. Crim. App. 1992).

300. The Court finds that Tucker repeatedly assured both the State and this Court that despite his personal beliefs about the likelihood of a capital murderer's being violent in the future, he would follow the law and require the State to prove beyond a reasonable doubt that the answer to the future-dangerousness special issue should be "yes." (RR 9: 111-12, 129-30, 134-35, 170).

301. Moreover, to the extent Tucker vacillated on his ability to follow the law, this Court was in the best position to determine whether he was indeed biased. *See Feldman*, 71 S.W.3d at 744; *see also Teague v. State*, 864 S.W.2d 505, 514 (Tex. Crim. App. 1993) (holding that the trial court did not err in denying a challenge for cause where the prospective juror initially indicated to defense counsel that he

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 82 of 125   PageID 1872

"felt" he would automatically answer the special issues "yes," but his later answers to the prosecutor indicated that he would follow the law and answer the special issues based on the evidence presented), *overruled on other grounds by Robertson v. State*, 871 S.W.2d 701 (Tex. Crim. App. 1993); *Cooks v. State*, 844 S.W.2d 697, 713 (Tex. Crim. App. 1992) (upholding the denial of a challenge for cause where some of the prospective juror's responses to defense questioning indicated that she would automatically answer the special issues on a finding of guilt, but the trial court specifically questioned juror on the matter and elicited contrary responses, as did the State).

302. The Court finds that applicant has failed to prove by a preponderance of the evidence that Tucker was biased against the law governing the future-dangerousness special issue.

303. The Court finds that Tucker held no such bias.

### Larry Carroll

In his twenty-ninth ground for relief, applicant contends that prospective juror Larry Carroll should have been struck for cause because he (1) would always answer the future-dangerousness special issue "yes" and (2) believed that mere presence alone makes one a party to an offense. (RR 12: 106).

*Carroll did not have a bias against the law concerning the future-dangerousness special issue.*

304. The Court finds that during questioning by the State, Carroll agreed he could hold the State to its burden of proof on the future-dangerousness special issue and could

310

answer it "yes" or "no" according to the evidence. (RR 12: 64-68). He acknowledged there might be situations in which someone who had been convicted of capital murder would not pose a continuing threat to society. (RR 12: 67-68).

305. The Court find that under defense examination, Carroll was questioned about his "feelings" regarding the future-dangerousness special issue:

Q. [DEFENSE COUNSEL]    That is what the law is. Now, a lot of jurors, frankly, have problems with that concept. Because this is what they tell us. Well, if the State has already proven to me right here in court that the person on trial is a person who is engaged in a robbery, first of all, and then during the course of that robbery intentionally killed a police officer when he knew he was a police officer, well, that is the type of person who to me is always going to be a continuing threat. Okay?

A. [PROSPECTIVE JUROR]    Okay.

Q.    So many jurors tell us that by the time they have heard the evidence which convinced them the defendant was guilty, they don't need to hear anything else in regards to Special Issue Number 1, that has already been answered for them. Okay? And so that they say, well, my answer is always going to be yes, if the State has proven to me that the person here on trial is an intentional murderer and did so under one of those aggravating factors that are listed there in front of you. How do you feel about that?

A.    I agree with it.

Q.    Now, you understand, Mr. Carroll, that that is not what the law says again, and I'm going back over that. The law says that a jury has to presume that the answer to the question is no. Okay? Even though they have found somebody guilty of capital murder, an intentional murder with one of those aggravating factors. Okay? But many jurors just like yourself have told us that that you feel, and we don't have any quarrel with them feeling that way, it is just something we need to know right now.

A.    Uh-huh.

Q.    And is that, Mr. Carroll, the way you feel?

311

A.     Yeah.

(RR 12: 91-92).

306.    The Court finds that later, in response to this Court's inquiries, Carroll returned to the position he had taken with the State and assured this Court that he would presume the answer to the future-dangerousness special issue to be "no" and require the State to prove beyond a reasonable doubt that it should be "yes." (RR 12: 105).

307.    The Court notes that an isolated statement will not require a prospective juror's removal for cause if his voir dire responses, considered as a whole, demonstrate he can follow the law. *Cooks*, 844 S.W.2d at 711.

308.    The Court finds that Carroll repeatedly said he would follow the law and require the State to meet its burden of proof on the future-dangerousness special issue. (RR 12: 64-65, 105).

309.    Additionally, the Court finds that Carroll said several times that he would wait to hear all the facts before determining whether applicant would pose a future danger. (RR 12: 65-68). He agreed, therefore, that a guilty verdict should not dictate his answers to the special issues. (RR 12: 67).

310.    Moreover, the Court finds that Carroll was, at best, a vacillating veniremember with respect to his ability to answer the future-dangerousness special issue "no." *Garcia*, slip op. at 7.

312

311. This Court was therefore in the best position to resolve Carroll's qualifications as a juror. *See Banda*, 890 S.W.2d at 55 ("It is not error on the part of the trial court to deny a challenge for cause to a veniremember who gives equivocal answers on whether or not he would automatically say 'yes' to one of the special issues.")

312. The Court finds that applicant has failed to prove by a preponderance of the evidence that Carroll was biased against the law concerning the future-dangerousness special issue.

313. The Court finds that Carroll's voir dire responses, considered as a whole, demonstrate that he could follow the law regarding the future-dangerousness issue.

*Carroll did not have a bias against the law of parties.*

314. The Court finds that during his examination by the State, Carroll said he agreed with this rule. (RR 12: 75). To the defense, however, Carroll intimated that as long as applicant was *present* during the commission of the offense, he would find him guilty as a party. (RR 12: 95).

315. The Court notes that before a prospective juror may be struck for having a bias against the law, the relevant law must be explained to him and he must be asked whether he can follow the law despite his personal views. *Sells v. State*, 121 S.W.3d 748, 759 (Tex. Crim. App.), *cert. denied*, 540 U.S. 986 (2003).

316. The Court finds that Carroll's responses to the State's questions showed he understood and could apply the law regarding party liability. (RR 12: 74-75).

317. Nevertheless, applicant contends that the following exchange demonstrates Carroll's bias:

Q. [DEFENSE COUNSEL]      . . . Some people have, frankly, told us that, well, I understand what those requirements are, I see what you're saying.  But my belief is that if a person went into it, was in any way participated with the robbery and if a person happened, even if they didn't think it through that far, that that is going to be enough for me and I'm going to find—I'm going to find him guilty, number one, and I'm going to find the answer to Special Issue Number 2 to be yes.  As long as the State has got to show they were there and they were present, but that is really all they're going to have to show me.  How do you feel about that?

A. [PROSPECTIVE JUROR]      That's right.

(RR 12: 95).

318.   The Court finds that while this exchange may reveal something about Carroll's personal feelings or beliefs, it does not establish that he would be unable to abide by the law that mere presence alone does not make one a party to an offense.  It does not, in other words, show that Carroll's personal views would prevent him from following the law.  *See id.* (holding that the proponent of a challenge for cause must show that the prospective juror understands the law and cannot overcome his prejudice well enough to follow it).

319.   Moreover, as the Court of Criminal Appeals held on direct appeal, to the extent Carroll made contradictory statements, this Court was in the best position to resolve his qualifications.  *See Garcia*, slip op. at 7; *see also Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003).

320.   For all the foregoing reasons, the Court finds that applicant has not proven by a preponderance of the evidence that Carroll was biased against the law of parties.

314

321.    The Court finds that, given his earlier assurances to the State, Carroll held no such
bias. *See Rachal v. State*, 917 S.W.2d 799, 814 (Tex. Crim. App. 1996) (holding
that the trial court did not abuse its discretion in denying a challenge for cause
where the prospective juror was never directly asked if he could follow the law,
and never clearly stated that he could not do so).

### *Gregory Babineau*

In his thirty-first ground for relief, applicant contends that prospective juror
Gregory Babineau should have been struck for cause because he (1) would return a guilty
verdict even if the State failed to prove the manner and means of death as alleged in the
indictment, (2) believed an indictment was some evidence of guilt, (3) could never
consider a five-year sentence for the lesser-included offense of murder, (4) would always
answer the future-dangerousness special issue "yes," and (5) could never find sufficient
mitigating circumstances to warrant a "yes" answer to the mitigation special issue. (RR
14: 82-85). Applicant also maintains that Babineau exhibited a bias against him by
saying he would always believe a police officer's testimony over that of a lay witness.
(RR 14: 83).

*Babineau did not have a bias against the law concerning the State's burden of proof.*

322.    The Court finds that Babineau assured the State that he would require the
prosecution to prove beyond a reasonable doubt each and every element of the
charged offense. (RR 14: 27-28). Later, defense counsel quizzed him on his
ability to return a not-guilty verdict if the State's proof failed on a "technicality":

Q. [DEFENSE COUNSEL]      . . . [I]t always comes down to a situation in which you know in your heart of hearts that the person on trial is guilty. You know, it's not like there's some questions in your mind as to whether they identified him. . . . [W]e could put it on videotape. . . . And you could look at the film and say that's the guy that is sitting over there in the defendant's chair and, yeah, that's the clerk in the store that got shot and you can be convinced because not only are you hearing testimony, but you can see it on the screen.   But then when you get down there, there's something that they left out. . . . You see the guy go in and he shoots the clerk three or four times.  And then on the video you see him lean over the clerk, make some motion and then he leaves the store.  And they allege that . . . the defendant took the life of so and so by shooting him with a firearm. You look at the video and you see him walk in and he's got a gun in his hand and you see him shoot and you see the clerk fall and you see him leave.

A. [PROSPECTIVE JUROR]      Okay.

Q.      Medical examiner comes in here and says, yeah, I examined the body of the clerk and he was shot five times at close range, nine millimeter. What killed him, though, was somebody stabbed him in the heart.  The gunshot wounds didn't kill him at all.  That explains, then, at that point in time what the guy was doing when he was leaning over the clerk.  And it's the same person you can see on the video.

A.      Uh-huh.

Q.      Some people say, look, if that's the law, I don't want to have any part of it.  Go find you some other jurors, because I couldn't go home and go to my work and I couldn't go home and face my wife and kids and tell them that I had let somebody off because some dumb prosecutor couldn't get the county right or some prosecutor didn't talk to the medical examiner and find out what killed somebody.  What do you think about that?

. . . .

A.      Would it bother me?  No.  To make the right decision.

Q.      Would you find him guilty anyway?

A.      I would find him guilty, yes.

. . . .

Case 3:06-cv-02185-M Document 108 Filed 07/06/15 Page 89 of 125 PageID 1879

Q.    [T]he defendant is the person who brought about his death, but because of the State's failure of evidence, the law, or the Court's charge, would require that you find the defendant not guilty.

I'm just thinking that talking to you, seeing you answered the questions both from the State and myself, that that would be about as offensive to your conscience as anything we can dream of?

A.    We would have to prove [sic] him not guilty because of that one little technicality because he died of a knife stab wound, instead of gunshot wound, even though you saw him get shot?

Q.    That's correct?

A.    That sucks.

. . . .

Q.    But, you know, they just—somebody was asleep at the switch and they didn't figure out, hey, it happened somewhere else. So once again, it would be a mistake on their part, no question in your mind, I take it you couldn't, you couldn't find that, right?

A.    Correct.

(RR 14: 58-62).

323.    The Court finds that upon further questioning by this Court, Babineau said that while he was not "comfortable" acquitting a defendant because the State had failed to prove an element such as manner and means, he could follow the law. (RR 14: 78-80).

324.    The Court finds that, by applicant's own admission, Babineau was at best a vacillating veniremember with respect to his ability to follow the law concerning the State's burden of proof. (Writ Application, p. 93).

317

325. As the Court of Criminal Appeals recognized on direct appeal, this Court was in the best position to determine whether Babineau held a bias against the law. *See Garcia*, slip op. at 7.

326. Moreover, the Court notes that a prospective juror need not agree with the law so long as his personal views do not substantially impair his ability to abide by his oath as a juror. *Rayford v. State*, 125 S.W.3d 521, 532 (Tex. Crim. App. 2003).

327. The Court finds that Babineau initially said he would require the State to prove beyond a reasonable doubt each and every element of the offense as alleged in the indictment. (RR 14: 27-28). Later, when confronted with a troubling scenario in which he would be forced to acquit an ostensibly guilty defendant due to the State's failure to allege and prove the proper manner and means, Babineau understandably found such a prospect disagreeable. (RR 14: 61). Ultimately, however, after this Court reiterated the law, Babineau said that despite his discomfort and "[b]ecause that's the law," he could find applicant not guilty if the State failed to prove even a relatively trivial averment in the indictment. (RR 14: 79-80).

328. Thus, the Court finds that Babineau recognized the distinction between his personal scruples and his responsibilities as a juror.

329. Consequently, this Court finds that Babineau's personal views would not have impaired his obligation to follow the law.

318

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 91 of 125   PageID 1881

330. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against the law concerning the State's burden of proof.

331. The Court finds that Babineau held no such bias. *See Cantu v. State*, 842 S.W.2d 667, 683 (Tex. Crim. App. 1992) (upholding the denial of a challenge for cause where the record showed that the prospective juror was confused when he indicated he might find the defendant guilty even if the State failed to prove all the elements of the offense as alleged in the indictment; upon further questioning by the trial court, he said he could follow the law and hold the State to its burden of proof); *Lane v. State*, 822 S.W.2d 35, 47-48 (Tex. Crim. App. 1991) (holding that the trial court did not err in denying a challenge for cause to a prospective juror who said he would find the defendant guilty even if the State failed to prove "some technical thing" in the indictment such as the location of the offense, where, after the law was clarified, he stated without hesitation that he could follow the law and the judge's instructions).

*Babineau did not have a bias against the law concerning the presumption of innocence.*

332. The Court finds that Babineau first told the State that he agreed with the presumption of innocence and that he would not consider the indictment as any evidence of applicant's guilt. (RR 14: 28-29). To the defense, however, Babineau said that he suspected applicant "must have done something," or, as defense counsel put it, "if there's this much smoke down here, there has to be a fire somewhere." (RR 14: 72-73). When asked whether applicant's current

319

incarceration sufficed for him to presume applicant guilty, Babineau replied that he "would like to hear evidence and all that." (RR 14: 73). Still, he said he was fairly certain that applicant had done "something." (RR 14: 73).

333. The Court notes that a reviewing court must defer to the trial court's decision on a challenge for cause when the record supports both the ability and the inability of the prospective juror to follow the law. *Wolfe*, 917 S.W.2d at 276.

334. The Court finds Babineau gave repeated assurances that he could keep an open mind and hold the State to its burden of proof. (RR 14: 28-29).

335. Accordingly, the Court finds that Babineau would have held the State to its burden of proof and would not have considered the indictment as evidence of applicant's guilt. *See Ladd*, 3 S.W.3d at 560 (holding that the trial court did not abuse its discretion in denying a challenge for cause to a prospective juror who told defense counsel that he thought the defendant's arrest and indictment "suggest[ed]" guilt; that "where there's smoke, there's fire"; and that "if someone is one trial, there's at least some reason for them to have been brought in before the court" where, upon questioning by the State and the trial court, the prospective juror repeatedly said he could hold the State to its burden of proof).

336. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against the law concerning the presumption of innocence.

337. The Court finds that Babineau held no such bias.

*Babineau did not have a bias against the law concerning the minimum punishment for murder.*

338.   The Court finds that in response to questioning by the State, Babineau said that if he found applicant guilty of the lesser-included offense of murder, he could keep an open mind with respect to punishment and could even impose a five-year sentence if he thought it was the "right thing to do." (RR 14: 32). Later, when defense counsel asked whether he would ever be able to assess a five-year sentence for murder, Babineau replied, "No, I don't think so." (RR 14: 64). Ultimately, however, Babineau assured this Court that he could contemplate a five-year sentence where appropriate. (RR 14: 80).

339.   Once again, given these vacillating responses, this Court was in the best position to ascertain Babineau's qualifications as a juror. *See Garcia*, slip op. at 7; *see also Feldman*, 71 S.W.3d at 744.

340.   Considering Babineau's many assurances that he could remain open-minded to the possibility that five years might be an appropriate punishment under some circumstances, the Court finds that Babineau would have complied with the law regarding the minimum punishment for murder. (RR 14: 32, 80). *See Cooks*, 844 S.W.2d at 709-10 (holding that the trial court did not err in denying challenges for cause to prospective jurors who initially expressed reservations about assessing the minimum punishment for the lesser-included offense, but ultimately said they could follow the law and remain open-minded).

341. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against the law concerning the minimum punishment for murder.

342. The Court finds that Babineau held no such bias.

*Babineau did not have a bias against the law concerning the future-dangerousness special issue.*

343. The Court finds that Babineau initially told the State that he could answer this issue "yes" or "no" depending on whether the State met its burden of proof. (RR 14: 37-39, 41-43). Later, defense counsel questioned Babineau concerning what evidence he would look to in answering the future-dangerousness issue:

Q. [DEFENSE COUNSEL]    . . . Let's say that you find the defendant guilty beyond a reasonable doubt of committing a capital murder. At that point in time the State may present other evidence to you or they may not present other evidence. In other words, they may show that you have been in prison ever since he turned adult or they may not show anything. They may not have anything else to put on.

So when you get to question No. 1, you are asked is he going to be a continuing danger to society because he committed criminal acts of violence, a lot of people say, look, I was convinced beyond a reasonable doubt that the person I was dealing with is the type of person that would and did commit capital murder, the answer to question No. 1 is pretty easy. Sure he's going to be a continuing threat to society. He's already gone out and robbed and killed somebody or robbed and raped somebody, whatever the crime he's charged with?

A. [PROSPECTIVE JUROR]    Uh-huh.

Q. What do you think about that, Mr. Babineau?

A. They have to show evidence to prove it, right?

Q. If they have got any. There may not be any, but some people say, look, what evidence do I need? I've already found that he not only

91

committed an intentional murder, but he committed an intentional robbery or intentional rape or an intentional burglary or I could check off the list. And, you know, I don't need any more proof, other than the crime itself to answer question No. 1.

What do you think? Would you have to look to something else or would the facts of the case itself answer that for you?

A.    The facts should answer that for me.

Q.    I'm sorry?

A.    The facts I think—I'm not sure.

Q.    Well, it's a hard question. All I'm asking you is, is you understand what at this point—before you get to Special Issue No. 1, see, we have to project ahead of time and pretend that things have happened or not. But we have to—we have to put you in a position to where—and eleven other people have heard evidence in the courtroom that's convinced all twelve of you beyond a reasonable doubt that the person on trial is not only a murderer, a murder that you thought the only logical punishment would be—would be life or death, but they have proven not only is the person a murderer, but he's a capital murderer. Somebody that not only murdered intentionally, but did something that would aggravate it.

And then, like I say, may be more evidence there; may be no more evidence. But I'm kind of getting the impression, and if I'm wrong, correct me, but I kind of get the impression that when you get to Special Issue No. 1, that you probably automatically answer that that should be yes, that the person would be a continuing threat to society because they are going to be violent in the future. Is that the way—

A.    Yes.

Q.    So let me get this—let me see if I'm hearing you correctly. If you get to Special Issue No. 1, if you found the person guilty in your mind, the answer to Special Issue No. 1 would always be yes. Is that a correct statement?

A.    Most likely, yes, it would.

(RR 14: 69-71).

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 96 of 125   PageID 1886

344. The Court finds that, at the close of the voir dire examination, it again explained the law with respect to the future-dangerousness special issue and then specifically asked Babineau whether he could return a "no" answer if the State failed to meet its burden of proof. (RR 14: 80-81). Babineau said he could indeed answer "no" under those circumstances. (RR 14: 81).

345. The Court finds that although Babineau did say that he "probably" or "[m]ost likely" would answer the future-dangerousness special issue "yes," he also recognized that it was the State's burden to prove future dangerousness.

346. The Court finds that the totality of Babineau's voir dire responses indicates that his answer to the future-dangerousness issue would not be dictated by the guilty verdict, but would, rather, be determined by an examination of all the evidence, including the facts of the offense. *See Cooks*, 844 S.W.2d at 713 ("[T]he facts and circumstances of a capital offense alone, if particularly heinous in nature, can be sufficient to support an affirmative response to the anti-parties special issue.").

347. In any event, the Court finds that Babineau was, at best, a vacillating veniremember. This Court was therefore in the best position to resolve his conflicting responses. *See Garcia*, slip op. at 7; *see also Feldman*, 71 S.W.3d at 748 (upholding the denial of a challenge for cause where, depending on who asked the question, the prospective juror vacillated on whether she would automatically return a "yes" answer to the future dangerousness issue).

324

348. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against the law governing the future-dangerousness special issue.

349. The Court finds that Babineau held no such bias.

*Babineau did not have a bias against the law concerning the mitigation special issue.*

350. The Court finds that Babineau assured the State that even after having answered the first two special issues "yes," he could answer the mitigation issue "yes" or "no" according to the evidence. (RR 14: 46-47). Though he admitted he could not immediately think of anything he would regard as mitigating evidence, he agreed to give the issue "the fair weight it deserves." (RR 14: 47).

351. The Court finds that Babineau equivocated under defense questioning, however: at first, he told defense counsel he could be persuaded to answer the mitigation special issue "yes"; later, he said he could never find sufficient mitigating circumstances to warrant a life sentence. (RR 14: 76-78).

352. The Court finds that, ultimately, Babineau told this Court that he could answer the mitigation special issue "yes" or "no" depending on the evidence. (RR 14: 81-82). Additionally, Babineau specifically assured this Court that he could answer this issue "yes" even though applicant would then receive a life sentence. (RR 14: 82). *See Coleman v. State*, 881 S.W.2d 344, 352 (Tex. Crim. App. 1994) (holding that the trial court did not err in denying a challenge for cause for an inability to consider mitigating evidence where the record showed that the prospective juror could listen to all the evidence with an open mind).

353. The Court finds that any hesitation on Babineau's part was simply due to his confessed inability to readily envision the kind of evidence he might consider mitigating. (RR 14: 47).

354. The Court notes that a juror need not regard any particular evidence as mitigating. *Allridge v. State*, 850 S.W.2d 471, 481-82 (Tex. Crim. App. 1991). The law requires only that jurors consider all the evidence in determining whether the defendant's "moral blameworthiness" should be reduced. TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(f)(4); *Maldonado v. State*, 998 S.W.2d 239, 250 (Tex. Crim. App. 1999).

355. The Court finds that Babineau specifically acknowledged that there "could be some evidence out there" to warrant a "yes" answer to the mitigation special issue and agreed to keep an open mind to such evidence. (RR 14: 46-47, 76-77).

356. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against the law concerning the mitigation special issue.

357. The Court finds that, considering his voir dire responses as a whole, Babineau held no such bias.

*Babineau did not have a bias against applicant.*

Finally, applicant contends Babineau should have been struck for cause because he could not impartially judge the credibility of witnesses. Specifically, he claims that Babineau would always find a police officer more credible than a lay witness.

326

358. The Court recognizes that a defendant may insist on jurors who will impartially judge the credibility of witnesses. *Hernandez v. State*, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978).

359. The Court further recognizes that a prospective juror who believes that a police officer would never lie under oath has an impermissible bias against the defendant under article 35.16(a)(9). TEX. CODE CRIM. PROC. ANN. art. 35.16 (a)(9); *Lane*, 822 S.W.2d at 42.

360. The Court finds that Babineau gave vacillating responses to the question whether he would always believe the testimony of a police officer over that of a lay witness. He first assured the State that in the event of a conflict, he could disbelieve a police officer's testimony if he found the lay witness more credible. (RR 14: 47-48). Later, however, he told the defense that he would always believe the police officer "simply because he was a police officer and for no other reason." (RR 14: 66-67). Still later, in response to questioning by this Court, Babineau said he would *not* always believe a police officer's testimony. (RR 14: 80).

361. The Court notes that it was best equipped to resolve the prospective juror's contradictory responses. *See Garcia*, slip op. at 7; *see also Lane*, 822 S.W.2d at 45 (holding that the trial court did not abuse its discretion in denying a challenge for cause where, although the prospective juror gave some responses indicating that she was predisposed to always believe police officers, she also said that she would evaluate a police officer's credibility as she would any other witness's).

327

362. The Court finds that applicant has failed to prove by a preponderance of the evidence that Babineau was biased against him.

363. The Court finds that Babineau held no such bias.

*Lillian Lyles*

In his thirty-third, applicant contends that prospective juror Lillian Lyles should have been struck for cause because she (1) would answer the anti-parties special issue "yes" if she found that applicant had participated in an offense in which weapons were used, (2) would automatically answer the mitigation special issue "no," and (3) could never assess a five-year sentence for murder. (RR 25: 76-77).

*Lyles did not have a bias against the law concerning the anti-parties special issue.*

364. The Court finds that Lyles told the State that she would consider all the evidence before answering the anti-parties special issue and would require the State to prove beyond a reasonable doubt that the answer should be "yes." (RR 25: 42). She further assured the State that she would "keep [her] mind open" throughout the entire trial and would not "automatically answer anything" before hearing all the evidence. (RR 25: 51).

365. The Court finds that Lyles told defense counsel that there is "always a chance" during an armed robbery that "somebody will get hurt." (RR 25: 59-60). She agreed, however, that there might be a distinction in punishment as between the party who actually shot and killed the victim and the party who participated in the robbery, but did not take an active role in the killing. (RR 25: 59). She also said that, in determining the proper punishment for the non-shooter, she would look to

328

the evidence and what it revealed about "how much that person knew about what was going on." (RR 25: 63-64).

366. The Court finds that when defense counsel pressed her further, Lyles's responses became more ambiguous:

> Q. [DEFENSE COUNSEL]      . . . [The prosecution] ha[s] to prove to you that the defendant anticipated that a human life would be taken. Does that mean more than it's just possible out there that it could happen?
>
> A. [PROSPECTIVE JUROR]      Yes. If you, a person goes into a situation where there are weapons being used, I mean there's that likelihood that something could happen, something bad.
>
> Q.      What I understand then, you're saying if an individual goes in with a weapon that that answer would always be that you would anticipate a human life would be taken?
>
> A.      Could be. It could be. A human life could be taken, not that it will be, but it could be.
>
> Q.      Okay. So, if, in fact, you found the defendant did, in fact, participate where there where weapons involved, is it fair to say that you would always find that he anticipated that a human life would be taken? Is that fair?
>
> A.      Yes, uh-huh.

(RR 25: 64-65).

367. The Court finds that Lyles later assured the Court that she would make the State prove beyond a reasonable doubt that the anti-parties special issue should be answered "yes." (RR 25: 74).

368. The Court finds that, in challenging Lyles for cause, applicant argued that she had "unequivocally stated that she would always find the answer to Special Issue No. 2 to be yes, if she found the defendant guilty as a party in a capital murder case, and

98

if weapons were used, which necessarily is going to be the case in a murder case." (RR 25: 76).

369. The Court finds that Lyles did indeed say she would always find in such a scenario that applicant anticipated a human life *would* be taken. (RR 25: 65). Immediately before this statement, however, she had taken pains to point out that she would only find that applicant anticipated a human life *could* be taken. (RR 25: 65).

370. The Court finds that Lyles may have misunderstood defense counsel's questions; she may have also misunderstood the relevant law.

371. Moreover, the Court finds that applicant cites no authority for the proposition that a prospective juror is challengeable for cause simply because she would infer actual anticipation from the defendant's participation in an armed offense.

372. The Court finds that Lyles's responses indicate that she would base her answer to the anti-parties special issue on the evidence.

373. The Court notes that the fact that Lyles would require less or different evidence than applicant would have liked to be convinced beyond a reasonable doubt of actual anticipation does not mean that she was biased against the law. *Cf. Howard v. State*, 941 S.W.2d 102, 127 (Tex. Crim. App. 1996) (holding that it was the State's burden, as the challenging party, to show that the prospective juror's refusal to answer the future-dangerousness issue in the affirmative without evidence that the accused had committed a prior murder was predicated on something other than her personal threshold of reasonable doubt).

Case 3:06-cv-02185-M   Document 108   Filed 07/06/15   Page 103 of 125   PageID 1893

374. The Court finds that applicant has failed to sustain his burden of proving by a preponderance of the evidence that Lyles was biased against the law governing the anti-parties special issue.

375. The Court finds that Lyles held no such bias.

*Lyles did not have a bias against the law concerning the mitigation special issue.*

376. The Court finds that under questioning by the State, Lyles acknowledged that a defendant's youth or "how [he was] brought up" might be a mitigating circumstance. (RR 25: 44-45). She said she could "keep [her] mind open" to potentially mitigating evidence and could answer the mitigation special issue "yes," knowing that applicant would receive a life sentence. (RR 25: 45-46).

377. The Court finds that Lyles later told defense counsel that she could never "see that there is anything mitigating to give a person a life sentence." (RR 25: 65-66).

378. The Court finds that Lyles ultimately assured this Court that if presented with sufficient evidence, she could return a "yes" answer to the mitigation special issue. (RR 25: 74).

379. The Court finds that defense counsel's questions required Lyles to immediately envision a situation in which she would answer the mitigation special issue "yes." (RR 25: 65-66).

380. The Court notes that Lyles's inability to do so did not require her removal for cause, given that she had already assured the State and this Court that she would keep an open mind and would base her answer on the evidence. (RR 25: 45-46, 74). *See Maldonado*, 998 S.W.2d at 251 (deferring to the trial court's decision to

331

deny a challenge for cause where the prospective juror vacillated, but ultimately expressed his willingness to consider character and background evidence in answering the mitigation special issue); *McCoy v. State*, 713 S.W.2d 940, 951 (Tex. Crim. App. 1986) (holding that a prospective juror's inability to envision a situation in which he would respond "yes" or "no" to a special issue is not automatically grounds for reversing a trial court's ruling denying a challenge for cause).

381.   Furthermore, to the extent Lyles vacillated on her ability to give proper consideration to the mitigation special issue, this Court was in the best position to determine whether she did indeed have a bias against the law. *See Garcia*, slip op. at 7.

382.   The Court finds that applicant has failed to prove by a preponderance of the evidence that Lyles was biased against the law concerning the mitigation special issue.

383.   The Court finds that Lyles held no such bias.

*Lyles did not have a bias against the law concerning the minimum punishment for murder.*

384.   The Court finds that Lyles assured both the State and the Court that she could remain open-minded to the full range of punishment and that she could assess as little as five years' imprisonment in an appropriate case. (RR 25: 49-50, 75-76). She told the defense, on the other hand, that she could never assess a five-year sentence for murder. (RR 25: 66-68).

332

385. As the Court of Criminal Appeals noted on direct appeal, the Court finds that Lyles was, at best, a vacillating veniremember. *Garcia*, slip op. at 7.

386. Because Lyles ultimately said she could consider the full range of punishment, the Court finds that Lyles could have followed the law with respect to the minimum punishment for murder. (RR 25: 75-76). *See Garcia*, slip op. at 7; *see also Rosales v. State*, 4 S.W.3d 228, 233 (Tex. Crim. App. 1999) (holding that the trial court did not err in denying a challenge for cause where the prospective juror equivocated regarding his ability to consider a five-year sentence for murder, but ultimately assured the trial court that he could consider the full range of punishment).

387. The Court finds that applicant has failed to prove by a preponderance of the evidence that Lyles was biased against the law regarding the minimum punishment for murder.

388. The Court finds that Lyles held no such bias.

### *Alan Lucien*

In his thirty-fifth ground for relief, applicant contends that prospective juror Alan Lucien should have been struck for cause because he (1) would answer the anti-parties special issue "yes" if the evidence showed that applicant agreed to participate in an offense in which weapons would be used and (2) could never assess a five-year sentence for murder. (RR 36: 169).

*Lucien did not have a bias against the law concerning the anti-parties special issue.*

389. The Court finds that Lucien told the State that he could consider all the evidence in answering the anti-parties special issue. (RR 36: 129, 132-33). As with prospective juror Lyles, however, defense counsel's questioning on this subject yielded ambiguous responses. (RR 36: 157-160).

390. The Court finds that there may have been some confusion regarding the difference between anticipating that a human life *would* be taken and anticipating that a human life *could* be taken:

> Q. [DEFENSE COUNSEL]   How would you ever be able to tell that I was anticipating that somebody else other than myself was about to kill someone?
>
> A. [PROSPECTIVE JUROR]   Well, I would have to think that you'd have to look at the intention going into committing the crime, of that individual, was going to anticipate that somebody *could possibly* be killed before they went, before they ever went in to commit that crime.
>
> . . . .
>
> Q.   Let's say that myself and Mr. Lucas decide to go rob a bank. We're kind of a low budget operation, we've only got one gun. So, he's got a car, I've got a gun, we go down there, and I get out of the car, and he says, don't hurt anybody. I don't want, you know, I've already brought you down here and I'm not going to go in, but I don't want you to hurt anybody. Would that be anticipating that a human life would be taken?
>
> A.   Yes, it would.
>
> Q.   Even though his intent in saying that is to prevent a human life from being taken, right?
>
> A.   Yes, sir. But to me that's anticipating that it *could* happen. It's a *possibility* whenever they go in and commit that crime, even though they're not planning on killing anybody, there's a possibility that someone *could* be killed. To me that's an anticipation of the consequences that *could* happen once that crime was committed.

334

Case 3:06-cv-02185-M  Document 108  Filed 07/06/15  Page 107 of 125  PageID 1897

Q.     Okay. Let me ask you this. If we have a situation where people band together to do a certain crime.

A.     Yes, sir.

Q.     There's weapons involved. Would you always find that because of that they were anticipating that a human life would be taken?

A.     There's always that *possibility*, and I think you always have to anticipate that that is the consequences that *could* occur under those circumstances.

Q.     As far as you're concerned, if the State shows that people agreed to do the offense and there were weapons involved. . . . One or more, you know. . . . Just something that could cause someone's death. . . . That all the people would then, the answer to Special No. 2, Special Issue No. 2 would always be yes, that they anticipated that a human life would be taken?

A.     They anticipate, yes, sir.

(RR 36: 158-60). [Emphasis added.]

391.    The Court finds that it later attempted to clarify Lucien's position:

THE COURT:  . . . If you'll look at Special Issue No. 2, that last line anticipated that a human life would be taken. . . . From time to time in some of your remarks you said if someone took guns to a situation that they would anticipate that a life could be taken?

PROSPECTIVE JUROR:  Could be taken.

THE COURT:  Do you see the difference between would and could?

PROSPECTIVE JUROR:  Could be taken is it might happen. Would be taken, it's going to happen. And so they're anticipating when they're going in they're going to kill somebody.

THE COURT:  Okay. Would you make the State of Texas prove the answer to Special Issue No. 2 is yes beyond a reasonable doubt?

PROSPECTIVE JUROR:  Yes.

(RR 36: 166-67).

335

392. The Court finds that, to the extent his responses during defense examination suggested that he would automatically answer the anti-parties special issue "yes" if he found applicant guilty as a party, Lucien's failure to appreciate the difference between "would" and "could" calls the certainty of those responses into doubt. (RR 36: 159-60). Once the Court pointed out this distinction, Lucien said he would hold the State to its burden of proof on the anti-parties special issue. (RR 36: 166-67). This corresponds with his earlier assurances to the State that he would look at all the evidence and that he would return a "yes" answer only if the State had met its burden of proving that applicant actually anticipated that a human life would be taken. (RR 36: 129, 132-33).

393. The Court finds that, looking at the voir dire examination as a whole, Lucien would not have automatically answered the anti-parties special issue "yes." *See Cockrum v. State*, 758 S.W.2d 577, 586-87 (Tex. Crim. App. 1988) (upholding the denial of a challenge for cause where the record revealed that the prospective juror was initially confused by counsel's questions and unfamiliar with the law, but ultimately said she could follow the law).

394. In addition, as previously discussed, the Court notes that Lucien was not challengeable for cause simply because he would find that applicant anticipated that a human life would be taken based on the fact that applicant participated in a crime involving weapons.

395. The Court finds that the above exchange with defense counsel reveals how Lucien would weigh evidence that applicant took part in an armed crime in answering the anti-parties special issue.

396. The Court concludes that the fact that Lucien would find such evidence sufficient to prove actual anticipation does not demonstrate a bias against the law; it merely shows Lucien's personal understanding of proof beyond a reasonable doubt on this issue. *See Castillo*, 913 S.W.2d at 534.

397. The Court finds that applicant has failed to prove by a preponderance of the evidence that Lucien was biased against the law concerning the anti-parties special issue.

398. The Court finds that Lucien held no such bias.

*Lucien did not have a bias against the law concerning the minimum punishment for murder.*

399. The Court finds that Lucien repeatedly assured the State and this Court that he could consider the full punishment range for murder and that he could assess a five-year sentence "[i]f the facts and circumstances warranted." (RR 36: 142-43, 168).

400. Nevertheless, applicant contends that Lucien should have been struck for cause because he told defense counsel that he "[p]robably" could not consider a five-year sentence. (RR 36: 165).

401. The Court notes that the Court of Criminal Appeals has upheld the denial of a challenge for cause under similar facts. *See Rosales*, 4 S.W.3d at 233 (holding

337

that the trial court did not err in denying a challenge for cause to a prospective juror who told defense counsel he "probably" could not consider the five-year minimum sentence for murder, but, on questioning by the trial court, confirmed that he could consider the full punishment range).

402. The Court find that, at most, Lucien vacillated on his ability to follow the law. *See Garcia*, slip op. at 7.

403. The Court finds that applicant has failed to prove by a preponderance of the evidence that Lucien was biased against the law regarding the minimum punishment for murder.

404. The Court finds that Lucien held no such bias.

<u>*Robin Tucker*</u>

In his thirty-seventh ground for relief, applicant contends that prospective juror Robin Tucker should have been struck for cause because she (1) would always answer the future-dangerousness special issue "yes," (2) would expect the defense to bring forth mitigating evidence to justify imposing a life sentence, and (3) could never assess a five-year sentence for murder. (RR 37: 103-04).

*Tucker did not have a bias against the law concerning the future-dangerousness special issue.*

405. The Court finds that Tucker told the State that she could presume the answer to the future-dangerousness special issue to be "no" and require the State to prove that the answer should be "yes." (RR 37: 72-73).

338

406. The Court finds that later, in response to defense questioning, Tucker said that someone who had been convicted of capital murder would probably be a violent person in the future. (RR 37: 90). She also indicated, however, that she would have to consider the evidence in answering this question. (RR 37: 89).

407. The Court finds that that Tucker ultimately told the Court she could answer the future-dangerousness special issue "yes" or "no" depending on the evidence. (RR 37: 101).

408. The Court finds that Tucker assured both the State and this Court that she could answer the future-dangerousness special issue based on the evidence presented. (RR 37: 72-73, 101). *See Ladd*, 3 S.W.3d at 558-59 (holding that the trial court did not err in denying a challenge for cause where the prospective juror said he was inclined to answer the special issues in such a way that the death penalty would be assessed, but repeatedly assured the State and the trial court that he would answer the special issues based on the evidence).

409. The Court finds that applicant has failed to prove by a preponderance of the evidence that Tucker was biased against the law governing the future-dangerousness special issue.

410. The Court finds that Tucker held no such bias.

*Tucker did not have a bias against the law concerning the mitigation special issue.*

411. The Court finds that under questioning by the State, Tucker said she could keep her mind open to possible mitigating evidence. While she later told defense

339

counsel that she expected such mitigating evidence to be presented by the defense, this remark did not evince a bias against the law. (RR 37: 86-87).

412. The Court notes that because the law does not assign the burden of proof on the mitigation special issue to the State, a prospective juror is not subject to a challenge for cause simply because she would place the burden of proving the existence of mitigating circumstances on the defense. *See Ladd*, 3 S.W.3d at 559.

413. The Court finds that applicant has failed to sustain his burden of proving by a preponderance of the evidence that Tucker was biased against the law concerning the mitigation special issue.

414. The Court finds that Tucker held no such bias.

*Tucker did not have a bias against the law concerning the minimum punishment for murder.*

415. The Court finds that although she told the defense that she could never assess a five-year sentence for murder, Tucker told the State and this Court that she could remain open to the entire punishment range and could give a five-year sentence in an appropriate case. (RR 37: 81, 99-100, 101-02).

416. Because Tucker vacillated with respect to her ability to consider the minimum punishment for murder, this Court was in the best position to resolve her qualifications as a juror. *See Garcia*, slip op. at 7.

417. The Court finds that applicant has failed to prove by a preponderance of the evidence that Tucker was biased against the law regarding the minimum punishment for murder.

340

418. The Court finds that Tucker held no such bias.

419. In sum, the Court finds that applicant has failed to prove by preponderance of the evidence that any of the challenged veniremembers were biased against the law.

420. The Court concludes, therefore, that it properly denied applicant's challenges for cause and did not, therefore, violate his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

## STATE CONSTITUTIONAL CLAIMS

### Applicant's Claims Are Procedurally Barred

421. The Court finds that applicant argues his state constitutional claims together with his federal constitutional claims and does not contend that the two constitutions offer different levels of protection in this area of the law.

422. The Court concludes, therefore, that applicant's state constitutional claims have been procedurally defaulted and should be summarily denied. *See Emery*, 881 S.W.2d at 707 n.8.

423. Moreover, the Court finds that applicant could have raised his state constitutional claims on direct appeal, but chose instead to rely solely on the federal constitution.

424. The Court notes that habeas corpus may not be used to litigate claims that could have been brought on direct appeal. *Nelson*, 137 S.W.3d at 667.

425. For this additional reason, the Court concludes that applicant's state constitutional claims in grounds twenty-six, twenty-eight, thirty, thirty-two, thirty-four, thirty-six, and thirty-eight are procedurally barred and should not be addressed.

341

### Alternatively, Applicant's Claims Are Without Merit

426. The Court finds that the Texas Constitution affords no greater protection in this area of the law than the United States Constitution.

427. Accordingly, for the reasons discussed in connection with applicant's federal constitutional claims, the Court finds that applicant has failed to prove by a preponderance of the evidence that his state constitutional rights were violated by the denial of his challenges for cause.

428. The Court concludes that applicant suffered no such deprivation of his rights under the Texas Constitution. Grounds for relief twenty-six, twenty-eight, thirty, thirty-two, thirty-four, thirty-six, and thirty-eight should be denied.

### Applicant Was Not Harmed By the Denial of His Challenges for Cause

429. The Court notes that when federal constitutional error that is subject to a harm analysis is raised on habeas, the applicant bears the burden of proving by a preponderance of the evidence that the alleged error actually contributed to his conviction or punishment. *Fierro*, 934 S.W.2d at 374-75.

430. As previously noted, the United States Supreme Court has rejected the notion that the loss of a peremptory challenge due to the erroneous denial of a defense challenge for cause violates the constitutional right to an impartial jury. *See Ross*, 487 U.S. at 81.

431. Moreover, the Court finds that of the veniremembers challenged, only Robin Tucker and Susan Hutchinson actually sat on applicant's jury.

432. The Court finds that applicant not shown that either Robin Tucker or Susan Hutchinson were not fair and impartial jurors. Accordingly, the Court finds that applicant has failed to demonstrate that he was deprived of a lawfully constituted jury.

433. The Court concludes that applicant has failed to prove by a preponderance of the evidence that any error in the denial of his challenges for cause contributed to his conviction or punishment. *See Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001).

434. The Court also concludes that, even under the less stringent harmless-error standard employed when these types of claims are raised on direct appeal, applicant has failed to demonstrate any harm.

435. The Court notes that under state law, "harm from the erroneous denial of a defense challenge for cause focuses on whether a peremptory challenge 'was wrongfully taken from [the defendant].'" *Newbury v. State*, 135 S.W.3d 22, 30-31 (Tex. Crim. App. 2004) (citing *Johnson*, 43 S.W.3d at 6). Harm occurs when (1) the defendant exercises a peremptory challenge on a prospective juror whom the trial court should have excused for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant unsuccessfully requests an additional peremptory challenge to use on another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury. *Newbury*, 135 S.W.3d at 31. If the defendant received additional peremptory challenges beyond the fifteen allotted by statute, he must show that the

trial court erroneously denied a number of defense challenges for cause equal to at least one more than the number of additional peremptory challenges granted in order to show harm. *Id.*

436. The Court finds that, because applicant was not granted any additional peremptory challenges beyond those mandated by statute, he need only show that one of his challenges for cause was erroneously denied in order to demonstrate harm.

437. For the reasons set forth above, the Court finds that applicant has failed to meet even this minimal burden.

438. Accordingly, the Court concludes that applicant was not harmed by the denial of his challenges for cause.

439. For all the foregoing reasons, grounds for relief twenty-five through thirty-eight should be denied.

### GROUND 39: APPELLATE REVIEW OF THE JURY'S ANSWER TO THE MITIGATION SPECIAL ISSUE

In his thirty-ninth ground for relief, applicant claims that Texas's death-penalty scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because it does not permit "meaningful appellate review" of the jury's answer to the mitigation special issue. He argues that the Court of Criminal Appeals has a constitutional and statutory duty to review the sufficiency of the evidence to support the jury's negative answer the mitigation special issue. *See* TEX. CODE CRIM. PROC. ANN. art. 44.251(a) (Vernon Supp. 2005) ("The court of criminal appeals shall reform a sentence of death to a sentence of confinement . . . for life if the court finds that there is

344

insufficient evidence to support . . . a negative answer to an issue submitted to a jury under Section 2(e), Article 37.071 . . . of this code.")

### Applicant's Claim Is Procedurally Barred

440. The Court finds that applicant could have raised this complaint on direct appeal, but did not. *See Garcia.*

441. The Court recognizes that the purpose of habeas corpus is to determine the lawfulness of confinement, not to litigate claims that the applicant neglected to raise on direct appeal. *See Ex parte McGowen*, 645 S.W.2d 286, 288 (Tex. Crim. App. 1983).

442. Accordingly, the Court concludes that applicant's thirty-ninth ground for relief is procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claim Is Without Merit

443. The Court finds that applicant has failed to prove by a preponderance of the evidence that Texas's death-penalty scheme violates his federal constitutional rights.

444. The Court notes that the Court of Criminal Appeals has already addressed and rejected the claim that article 37.071 is infirm as a matter of federal constitutional law because it precludes a meaningful review of the sufficiency of mitigating evidence. *See McFarland*, 928 S.W.2d at 498-99; *see also Tong*, 25 S.W.3d at 715; *Ladd*, 3 S.W.3d at 573. The Court of Criminal Appeals held that the constitutionality of article 37.071 is not contingent on appellate review of the mitigation issue: "So long as the jury is not precluded from hearing and

effectuating mitigating evidence, we have never regarded appellate review of mitigating evidence to be an essential component of a constitutionally acceptable capital punishment scheme." *McFarland*, 928 S.W.2d at 499. Indeed, the Court noted, such review would be a practical impossibility. *Id.*

445. Thus, the Court concludes that the failure of Texas's death-penalty scheme to permit "meaningful appellate review" of the jury's answer to the mitigation special issue does not violate the United States Constitution. Applicant's thirty-ninth ground for relief should be denied.

### GROUND 40: PROPORTIONALITY REVIEW

In his fortieth ground for relief, applicant contends that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the Court of Criminal Appeals conduct a proportionality review in death-penalty cases.

### Applicant's Claim Is Procedurally Barred

446. The Court finds that applicant could have argued on direct appeal that he had a constitutional right to a proportionality review of his death sentence, but failed to do so.

447. Thus, the Court concludes that applicant has forfeited this claim. *See Townsend*, 137 S.W.3d at 81. Applicant's fortieth ground for relief is procedurally barred and should not be addressed.

### Alternatively, Applicant's Claim Is Without Merit

448. The Court finds that applicant has failed to prove any constitutional violation by a preponderance of the evidence.

346

449. The Court notes that the Court of Criminal Appeals has previously rejected the contention that the Due Process Clause requires it to conduct proportionality reviews in death-penalty cases. *See King v. State*, 953 S.W.2d 266, 273 (Tex. Crim. App. 1997); *Hughes v. State*, 897 S.W.2d 285, 294 (Tex. Crim. App. 1994).

450. Thus, the Court concludes that applicant is not entitled to a proportionality review of his death sentence. Applicant's fortieth ground for relief should be denied.

## GROUND 41: DEFINING "MITIGATING EVIDENCE"

In his forty-first ground for relief, applicant contends that Texas's death-penalty scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because it limits the concept of mitigation to factors that make the capital defendant less morally blameworthy for his crime.

### Applicant's Claim Is Procedurally Barred

451. The Court finds that applicant's claim that the statutory definition of mitigating evidence is unconstitutionally narrow is one that could have been, but was not, brought on direct appeal. *See Garcia.*

452. The Court notes that an applicant may not use habeas corpus to litigate a claim that he could have raised on appeal. *See Boyd*, 58 S.W.3d at 136.

453. Accordingly, the Court concludes that applicant's forty-first ground for relief is procedurally barred and should be summarily denied.

347

### Alternatively, Applicant's Claim Is Without Merit

454. The Court finds that applicant has failed to prove by a preponderance of the evidence that Texas's death penalty scheme violates the Eighth and Fourteenth Amendments to the United States Constitution.

455. The Court notes that article 37.071 defines "mitigating evidence" as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(f)(4).

456. The Court further notes that the Court of Criminal Appeals has held that "[b]ecause the consideration and weighing of mitigating evidence is an open-ended, subjective determination engaged in by each individual juror," the statute "does not unconstitutionally narrow the jury's discretion to factors concerning only moral blameworthiness," as applicant contends. *Raby v. State*, 970 S.W.2d 1, 9 (Tex. Crim. App. 1998); *Cantu v. State*, 939 S.W.2d 627, 649 (Tex. Crim. App. 1996).

457. Accordingly, the Court concludes that the statute's definition of mitigating evidence is not unconstitutionally narrow. Applicant's forty-first ground for relief should be denied.

### GROUND 42: JURY'S SENTENCING DISCRETION

Applicant contends in his forty-second ground for relief that the statutory mitigation special issue violates the Eighth and Fourteenth Amendments to the United States Constitution because it permits the very type of open-ended discretion condemned by the Supreme Court in *Furman v. Georgia*, 408 U.S. 238 (1972).

348

## Applicant's Claim Is Procedurally Barred

458. The Court finds that applicant could have raised his *Furman* claim on direct appeal.

459. The Court concludes that by failing to do so, applicant has forfeited this claim. *See Townsend*, 137 S.W.3d at 81. Applicant's forty-second ground for relief is procedurally barred.

## Alternatively, Applicant's Claim Is Without Merit

460. The Court finds that applicant has failed to prove any constitutional violation by a preponderance of the evidence.

461. The Court notes that the Court of Criminal Appeals has rejected the contention that Texas's statutory mitigation issue allows the type of open-ended discretion condemned in *Furman*. *See Moore v. State*, 999 S.W.2d 385, 408 (Tex. Crim. App. 1999); *Pondexter*, 942 S.W.2d at 587. The Court in *Furman* was concerned with the open-ended discretion permitted by statutes that failed to narrow the class of death-eligible defendants. *Pondexter*, 942 S.W.2d at 587. "There is no prohibition against allowing juries to decide what evidence is mitigating, and how much weight they are going to give it." *Id.*

462. The Court therefore concludes that the mitigation special issue is not unconstitutional and applicant's *Furman* claim is without merit. His forty-second ground for relief should be denied.

349

## GROUND 43: BURDEN OF PROVING AGGRAVATING CIRCUMSTANCES

In his forty-third ground for relief, applicant contends that the statutory mitigation special issue violates the Eighth and Fourteenth Amendments to the United States Constitution because it fails to place the burden of proving aggravating circumstances on the State.

### Applicant's Claim Is Procedurally Barred

463. The Court finds that applicant could have raised on direct appeal this challenge to the mitigation special issue, but he did not. *See Garcia.*

464. The Court notes that habeas corpus does not exist to provide an applicant with a second opportunity to raise appellate claims. *See McGowen,* 645 S.W.2d at 288.

465. Thus, the Court concludes that applicant's forty-third ground for relief is procedurally barred and should not be addressed.

### Alternatively, Applicant's Claim Is Without Merit

466. The Court finds that applicant has failed to prove by a preponderance of the evidence that the mitigation special issue violates the Eighth and Fourteenth Amendments.

467. The Court notes that the Court of Criminal Appeals has repeatedly rejected the argument that the mitigation special issue is unconstitutional because it does not place on the State the burden of proof regarding aggravating evidence. *See Escamilla v. State,* 143 S.W.3d 814, 828 (Tex. Crim. App. 2004), *cert. denied,* 125 S. Ct. 1697 (2005); *Moore,* 999 S.W.2d at 408; *Williams v. State,* 937 S.W.2d 479, 491 (Tex. Crim. App. 1996). Because Texas law imposes on the State the burden

350

of proving certain prescribed aggravating circumstances, a burden of proof need not be prescribed for aggravating circumstances that might be considered in connection with the open-ended mitigation issue. *Williams*, 937 S.W.2d at 491.

468. Thus, the Court concludes that applicant's constitutional challenge to the mitigation special issue is without merit. His forty-third ground for relief should be denied.

### GROUNDS 44-45: INDIVIDUALIZED SENTENCING

#### *FEDERAL CONSTITUTIONAL CLAIM*

In his forty-fifth ground for relief, applicant contends that the death penalty, as it is administered in Texas, constitutes cruel and unusual punishment under the United States Constitution because of the impossibility of restricting the jury's discretion to impose the death penalty while at the same time giving the jury unlimited discretion to consider mitigating evidence. In support of this contention, applicant relies on Justice Blackmun's dissent in *Callins v. Collins*, 510 U.S. 1141 (1994).

#### Applicant's Claim Is Procedurally Barred

469. The Court finds that the Court of Criminal Appeals overruled applicant's federal constitutional complaint when he raised it in his twelfth point of error on direct appeal. *See Garcia*, slip op. at 10.

470. The Court notes that claims raised and rejected on direct appeal are procedurally barred from reconsideration on habeas review. *See Ramos*, 977 S.W.2d at 617.

471. The Court therefore concludes that applicant's forty-fifth ground for relief is procedurally barred and should not be addressed.

351

### Alternatively, Applicant's Claim Is Without Merit

472. The Court finds that applicant has failed to prove by a preponderance of the evidence that Texas's death penalty scheme violates the United States Constitution.

473. The Court notes that the Court of Criminal Appeals has repeatedly rejected the argument that Texas's death-penalty scheme violates the federal constitution because it fails to appropriately channel the jury's discretion. *See Rayford*, 125 S.W.3d at 532; *Cannady v. State*, 11 S.W.3d 205, 214 (Tex. Crim. App. 2000) (citing *Raby*, 970 S.W.2d at 7; *Lawton*, 913 S.W.2d at 558).

474. The Court finds that applicant has asserted no new or different arguments challenging these prior authorities.

475. Thus, the Court concludes that the death penalty in Texas does not constitute cruel and unusual punishment under the United States Constitution. Applicant's forty-fifth ground for relief should be denied.

### *STATE CONSTITUTIONAL CLAIM*

In his forty-fourth ground for relief, applicant contends that the death penalty constitutes cruel and unusual punishment under the Texas Constitution.

### Applicant's Claim Is Procedurally Barred

476. The Court finds that although he did not, applicant could have raised his state constitutional claim on direct appeal.

477. The Court notes that the writ of habeas corpus may not be used to advance claims that should have been brought on direct appeal. *See Nelson*, 137 S.W.3d at 667.

352

478. Moreover, the Court finds that applicant does not explain why the Texas Constitution provides or should provide any different or greater protection against cruel and unusual punishment than the protection afforded under the United States Constitution.

479. The Court concludes that applicant has procedurally defaulted his state constitutional claim by failing to support it with separate argument and authority. Applicant's state constitutional arguments will not be made for him. *See Muniz v. State*, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993).

480. For the foregoing reasons, the Court concludes that applicant's forty-fourth ground for relief is procedurally barred and should be summarily denied.

### Alternatively, Applicant's Claim Is Without Merit

481. The Court finds that applicant has failed to prove by a preponderance of the evidence that Texas's death-penalty scheme violates the Texas Constitution.

482. The Court notes that in *Cannady*, the Court of Criminal Appeals rejected a claim that Texas's death-penalty scheme violates Article I, section 13 of the state constitution due to the impossibility of reconciling the competing constitutional requirements of consistency and fairness. 11 S.W.3d at 214.

483. Thus, the Court concludes that that the death penalty does not constitute cruel and unusual punishment under the Texas Constitution. Applicant's forty-fourth ground for relief should be denied.

353