IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH C. GARCIA, | § | |
| PETITIONER, | § | |
| | § | |
| V. | § | |
| | § | CASE 3:06-CV-2185-M |
| WILLIAM STEPHENS, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | CAPITAL CASE |
| JUSTICE CORRECTIONAL INSTITUTIONS | § | |
| DIVISION, | § | |
| RESPONDENT. | § | |
| | § | |

**PETITIONER'S REPLY IN SUPPORT OF POST-JUDGMENT RELIEF**

Presently before the Court are Petitioner Joseph Garcia's motion for post-judgment relief (Doc. 106) and Respondent's opposition to that motion (Doc. 114). While Petitioner continues to press each of the arguments raised in the motion, this Reply focuses primarily on two sets of claims which were excluded from the evidentiary hearing: the IAAC claims, and the claims related to exclusion of juror Chmurzynski. Respondent repeatedly asserts that Petitioner has had "every opportunity" to present and develop these claims prior to the judgment, but that isn't true. Petitioner did not have an opportunity to present testimony by his appellate lawyer, and he did not have an opportunity to ask his trial attorney (or juror Chmurznski himself) about the voir dire because those claims were ruled off-limits at Respondent's urging.

First, Respondent argues that post-judgment relief under Rules 52 and 59 should be hen's-tooth rare, but that overstates the matter considerably. This Court has discretion to amend,

modify, and reconsider its findings and judgment because the record supports that relief and because the balance of equities favors it.

Second, the merits findings on IAAC in particular should be vacated. In light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), it is hard to believe that federal courts will continue to refuse to consider IAAC claims which were not raised by deficient state writ counsel *while the direct appeal was pending*. Once that dubious rule is overturned, Petitioner should have a full and fair opportunity to present his IAAC claims on the merits.

Third, the Court's findings with respect to the voir dire claims (both IATC and IAAC) are premature and manifestly erroneous given the limitations placed upon the development of evidence. As with the IAAC claims, Petitioner asked for an opportunity to present the supporting evidence, Respondent successfully opposed that request, and now Respondent contends that it is Petitioner's fault that he failed to present the evidence prior to judgment. Given the balance of equities, Petitioner asks this Court to exercise its discretion to reopen this case and amend or modify the findings as requested in the Motion.

## I.     Respondent Mischaracterizes the Legal Standard for Post-Judgment Relief.

Contrary to Respondent's exposition of the law, this Court possesses "a great deal of discretion in ruling on" a post-judgment relief motion. *Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. 2014) (O'Connor, J.) (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.2004)); *accord Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993). ("The district court has considerable discretion in deciding whether to reopen a case under Rule 59(e).") That discretion surely includes the power to grant the relief requested by Petitioner. Respondent

has not cited a single case in which a district court was *reversed* on appeal for granting post-judgment relief. At best, Respondent has provided citations in support of the general principle that it is difficult to overturn the *denial* of a post-judgment motion in a civil case. Yet there are plenty of reasons why Petitioner should overcome this burden, and why this Court should exercise its discretion favorably in this case.

First and foremost, this is a capital habeas case. The system always has an institutional interest in "finality," but the countervailing interests are much stronger when the losing party's life is at stake. The arguments raised in the motion would be sufficient to warrant additional or amended findings in a run-of-the-mill civil case such as *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1209–1210 (5th Cir. 1986) (allocating financial responsibility to pay a slip-and-fall settlement,) or *Simon v. United States*, 891 F.2d 1154, 1155 (5th Cir. 1990) (state-law damage limitations for federal medical malpractice tort claims). But the stakes are much higher here, and the balance should tip even further in Petitioner's favor.

One of Petitioner's chief arguments—that the Court should vacate or reconsider the surprising merits findings on claims which were deemed barred and *not* allowed to be presented at the hearing—is *exactly* the sort of issue that not only *may* be raised by post-judgment motion, but *must* be raised in a post-judgment motion. Indeed, just last month, the Fifth Circuit *faulted* a litigant who "did not avail itself" of a post-judgment motion for amended findings under similar circumstances. *See Ball v. LeBlanc*, 792 F.3d 584, 591–592 (5th Cir. 2015) (rejecting state's challenge to judicially noticed facts in part because the state did not file a motion under Rule 59(a)(2)). Post-judgment motions are perfectly appropriate when a party is surprised by factual

findings in a dispositive order. *See id.* Respondent's view of the law is *not* correct. This Court *can* grant Petitioner the relief he seeks, and it should.

Respondent also spends much time opposing supposedly "new arguments" and "new evidence." Petitioner has made several requests for additional findings based on the extant record, each of which were tied to a specific claim raised in the Amended Petition. None of Respondent's authorities oppose or forbid that form of post-judgment relief, and Rule 52 seems to permit exactly that kind of request. Often, as here, the need to request different or additional findings becomes clear only after reviewing other findings and conclusions made by the court. Recognizing this, Rule 52(a)(5) explicitly allows a challenge to findings even if a party did not previously object or request an alterantive. Fed. R. Civ. P. 52(a)(5). None of Respondent's binding authorities remotely stand for the proposition that the Rules may not be used to help a party "make its best case on appeal." There is no reason why this Court should not have an opportunity to evaluate the evidence *already* in the record before the appellate court does so. Here, with the exception of claims which were ruled off-limits at the evidentiary hearing, all of the requested factual findings are grounded in the extant record or in judicially noticeable documents. This distinguishes *Fontenot*, which sought new factual findings based on new evidence. *See Fontenot*, 791 F.2d at 1219.

Even if this Court were to limit its review of Petitioner's claims for "manifest injustice," as Respondent advocates, that standard is satisfied on this Record. "[T]here is no general definition of manifest injustice; it is a case-by-case decision based on equitable considerations." *Jones*, 998 F. Supp. 2d at 536. The Court must conduct an equitable balancing "between the need for finality and the need to render a just decision on the basis of all the facts." *Id.* (citation and internal quotation omitted). "The exercise of this discretion is guided in the context of a capital habeas case

by considerations arising from the 'unique nature of the death penalty and the heightened reliability demanded by the Eighth Amendment in the determination whether the death penalty is appropriate in a particular case.'" *Hearn v. Quarterman*, No. CIV.A.3:04CV0450-D, 2008 WL 679030, at *3 (N.D. Tex. Mar. 13, 2008) (Fitzwater, C.J.) (quoting *Sumner v. Shuman*, 483 U.S. 66, 72 (1987)).

The Court's equitable balancing should also take into account the absence of "unfair prejudice" to Respondent if the motion were granted. *Hearn*, 2008 WL 679030, at *3. On the other hand, the presence of premature merits findings, even if phrased in the alternative, might doom Petitioner's chances to seek appellate review of this Court's procedural rulings. If Respondent is entitled to win on the merits, then it should do so *after full presentation of the claims..* If the procedural rulings prevent full development of the merits, then the alternative merits rulings are premature and Petitioner might suffer unfair and potentially fatal consequences. The balance of equities heavily favors granting relief.

## II.     The Scope-Limiting Order Assured Petitioner That the Court Would Not Reach the Merits of Petitioner's IAAC Claims.

One of Petitioner's chief contentions is that he should not suffer an adverse federal *merits* judgment on any claim if he has never had a full and fair opportunity to develop an evidentiary record in support of that claim. Petitioner objected to the Magistrate Judge's alternative analysis of claims he did not raise in his initial state writ, including specifically the proposed findings on his IAAC claims. (Doc. 45 at 6–7, 11–13.) Petitioner argued that this Court could and should consider the merits of his claims *de novo* even though his deficient state post-conviction counsel failed to raise several claims in the initial state habeas application. *While those objections were pending*, this Court withdrew its reference to the magistrate judge and set the case for an

evidentiary hearing. (Doc. 66.) Respondent vociferously opposed the hearing (Doc. 68), and asked the Court to severely limit Petitioner's ability to present evidence in support of his claims. Petitioner responded that he should have a "full and fair" opportunity to present evidence on all of his claims, that state post-conviction counsel's haphazard performance could not be attributed to Petitioner, that Petitioner had not "failed to develop" the record in support of his federal claims, and that the Court should allow him to present evidence of his direct-appeal lawyer's deficient performance, too. (Doc. 72.)

After Petitioner filed this response, this Court resolved the dispute by means of its scope-limiting order. (Doc. 74.) At the time the order was entered, Petitioner had (a) objected to the magistrate judge's alternative merits analysis of Petitioner's federal claims; (b) requested a chance to present evidence to to all of his IAAC and IATC claims, and (c) protested that he was denied a full and fair opportunity to develop the Record in state habeas court. This Court's subsequent assurance that it would "not reach the merits of any claim that is barred and is not shown to come within an exception to bar," arose in that context. Petitioner and his federal habeas counsel perceived no need to amend or supplement the earlier objections regarding the magistrate's alternative merits findings because this Court said it would not reach the merits. (*See* Doc. 74 at 2.)

Given that Petitioner has urged the Court to allow him to present evidence on the IAAC claims, the subsequent denial and assurance served to limit his incentive to file additional challenges. "Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Lankford v. Idaho*, 500 U.S. 110, 126 (1991). When a dispositive order resolves unanticipated factual matters, a party *should* move the district court to amend or modify those findings. *Ball*, 792 F.3d at 591–592.

According to Respondent, the scope-limiting order "did not address Garcia's other non-IATC claims." (Doc. 114 at 10.) But that ignores the fact that Petitioner had asked the Court to present evidence on his IAAC claims at the hearing. (Doc. 72 at 5–6.) That request was denied, at Respondent's urging, but with the understanding that the claims would not be resolved on the merits. It simply isn't true that Petitioner had "every opportunity" to present this evidence. He had no realistic opportunity to present his IAAC claims. Petitioner should not suffer an adverse *merits* judgment without first having some opportunity to develop the claims.

Respondent has never explained how Petitioner was supposed to present his IAAC claims and develop a record in support *while his direct appeal was pending*. That insurmountable procedural hurdle was imposed by the State of Texas, and Petitioner argues that his IAAC claims cannot be procedurally barred after *Martinez* and *Trevino*. There are any number of ways the procedural issue might be resolved in Petitioner's favor: the Fifth Circuit or the Supreme Court might hold that the failure to present IAAC claims *during direct appeal* is not a "default," or else the courts might hold that Texas's requirement that a death-sentenced prisoner attack his own pending appeal constitutes "cause" for the procedural default; or, perhaps the courts will hold that deficient performance by state-writ counsel could be cause for IAAC as well as IATC. There are any number of ways the procedural ruling could be reversed. Texas did not provide capital prisoners like Petitioner with a "full and fair," meaningful opportunity to raise IAAC claims.

In that context, the alternative merits findings become much more dangerous. If Petitioner overcomes the procedural obstacle, Respondent will point to these alternative findings as an independent reason to deny relief to Petitioner. Petitioner would suffer unfair prejudice if he is denied the opportunity to appeal a procedural ruling based on premature alternative merits

findings. Vacating the merits findings would cause no prejudice to Respondent, but leaving them in place could work a grave injustice against Petitioner.

If, in the interest of judicial economy, Respondent wishes to have the merits decided on an "alternative" basis, then Petitioner should be allowed to fully develop the Record on those claims. But if Petitioner is *prohibited* from presenting the claim because his deficient post-conviction counsel did not make any efforts to consider or investigate those claims, then there is no reason to resolve the merits at all. Respondent's position appears to be that the Court is barred from considering the merits of the claim but also required to find for Respondent on the merits, without full evidence.

Petitioner is prepared to show a reasonable probability that his direct appeal would have reached a more favorable result if he had been provided adequate assistance during that critically important stage. (*C.f.* Doc. 114 at 15.) But he has never been allowed to do so, primarily because, in Respondent's view, that claim had to be raised (and the record fully developed) *while the direct appeal was pending*. And the only person who could pull off that Herculean task on Petitioner's behalf was Petitioner's half-hearted, state-provided writ counsel. If Petitioner's claim is procedurally barred, and there is no excuse for the default, then *neither* party is entitled to a merits adjudication. If the merits are to be resolved (even in alternative fashion), they should only be resolved after a full, fair, and meaningful opportunity to develop the record. Petitioner has never had that opportunity. He asks either that the Court vacate its alternative merits findings or grant him the opportunity to develop the record.

III.   **The State Court Record Was Not Adequate to Resolve the Voir Dire IATC and IAAC Claims, and this Court's Contrary Conclusion Was Manifestly Erroneous.**

The "manifest error" standard is also satisfied as to the voir dire IATC and IAAC claims. Because Petitioner was not allowed to ask his trial counsel questions about the jury selection claim, he never had a chance to fully develop the evidentiary record. Any conclusion that Petitioner failed to overcome a presumption of reasonable trial (or appellate) strategy would be manifestly erroneous because it is based on an inadequate record, namely, one in which the parties were not permitted to ask trial or appellate counsel their rationale for allowing the challenge. *See Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000) (Federal district courts should not make contested factual findings without offering the parties an opportunity to develop the record).

Similarly, any conclusion that Petitioner failed to show that exclusion of Chmurskinski violated *Witherspoon v. Illinois*, 391 U.S. 510 (1968), would be manifestly erroneous because it is based on an inadequate record—federal habeas counsel was forbidden from asking trial counsel about Chmurskinski's demeanor. Indeed, Chmurskinski himself could have testified if Petitioner had been allowed to present evidence at the evidentiary hearing.

Any conclusion that Petitioner failed to show prejudice would be manifestly erroneous because the logic of *Witherspoon* compels a different prejudice standard for ineffective assistance of counsel involving the constitutionally erroneous grant of challenges for cause. *Witherspoon* error is structural because it results in a "tribunal organized to return a verdict of death." *Gray v. Mississippi*, 481 U.S. 648, 668 (1987). It is likely also considered structural because it is impossible to determine the effect on the verdict of a different juror or jury. *Compare United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (Denial of counsel of choice is structural because it is impossible to know what decisions different counsel would have made differently.). The same is true of

ineffective failure to challenge *Witherspoon* error. And like freestanding *Witherspoon* error, ineffective assistance of counsel related to voir dire implicates the constitution. Besides, there is at least a reasonable chance that appellate counsel could have gotten the case reversed based on the *Witherspoon* error even without an added objection. Thus, this issue deserves more scrutiny.

Respondent argues that Petitioner "had the opportunity to present his arguments" in his Amended Petition. That is true, and Petitioner *did* argue that he was provided ineffective assistance by trial and appellate counsel with respect to the juror. (Amended Petition at 48–52, 86–87.) On the question of prejudice, Petitioner's federal habeas counsel asserted that he was denied a fair cross-section as a theory of prejudice from the Amended Petition onward. Petitioner argued that *Witherspoon* presumes prejudice upon a showing that even one juror was improperly excluded, (Am. Pet. at 51), and explicitly alleged as a theory of prejudice that "Counsels' failure to conduct any examination of the venireperson also deprived Mr. Garcia of his rights to secure a fair and impartial jury that was not selected using death prone procedures." (Am. Pet. at 51–52). This allegation of prejudice presents no "new theory."

Petitioner also objected to the magistrate's findings. And even if he hadn't objected, Rule 52 expressly permits a post-judgment challenge to the evidentiary support for a finding, "whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings." Fed. R. Civ. P. 52(a)(5).

Based on the transcripts alone, the *Witherspoon* claim is strong. (13 R.R. 244–249.) Chmurskinski never said he would not or could not follow the court's instructions; in fact, he supported the death penalty and believed in an "eye for an eye." He said that it would be *difficult* to impose, as it should be. There is at least a reasonable probability that the trial court would have

avoided *Witherspoon* error if trial counsel had objected, or that an appeals court would reverse if a freestanding *Witherspoon* claim had been raised on direct appeal, or that an objection would have *preserved* a meritorious appellate claim. The probability of appellate reversal if the issue were raised by either or both of trial and appeal counsel is enough to demonstrate prejudice.

Even Respondent concedes that intervening precedent can give rise to a claim for amended findings or a new trial. (Doc. 114 at 9–10.) Petitioner's motion cited *Davis v. Ayala*, 135 S. Ct. 2187 (June 18, 2015), which was decided after this Court's Memorandum Opinion and Judgment. *Ayala* holds that a petitioner must show *prejudice*, and then evaluates whether the error affected the composition of the jury. *See Ayala*, 125 S. Ct. at 2199–2308. Thus, Petitioner should be entitled to show prejudice by showing a reasonable probability of a differently composed jury

*Witherspoon* presumes prejudice in part because it is not possible to know how a different juror (still less a different jury) would have evaluated the same case; the same logic precludes application of a "different verdict" standard for ineffective assistance of counsel in voir dire. *Ayala* shows that the *Witherspoon* standard of changed composition applies to errors that affect voir dire, and not merely to pure, freestanding voir dire claims

Respondent relies upon a pre-*Ayala* decision, *Gomez v. Quarterman*, 529 F.3d 322 (5th Cir. 2008). (Doc. 114 at 18 n.6.) *Gomez* does not support Respondent's argument; it is not at all clear that the "reasonable probability of a different outcome" is a probability of a different *verdict*, as opposed to a different outcome to the voir dire proceeding, namely a *differently composed jury*. *See Gomez*, 529 F.3d at 332–333. Its references to *Strickland* are mere boilerplate. *See id.*

*Gomez* does not evaluate whether the trial counsel's performance changed the verdict; indeed, it does not evaluate prejudice at all. *See Gomez*, 529 F.3d at 330–334. In any event, *Ayala*

changes the analysis of prejudice, and in light of this intervening change in law Petitioner should be allowed to fully develop his IATC and IAAC claims based on the jury-selection error.

## CONCLUSION AND PRAYER FOR RELIEF

Petitioner continues to assert all the grounds raised in his Motion. This Reply focuses on the claims which were not permitted in the evidentiary hearing because they eliminate any worries that Petitioner is "rehashing" matters decided against him or looking for a do-over. The merits rulings are premature, because they are based on an inadequate evidentiary record. The procedural rulings are vulnerable. If the merits are to be resolved, they should be resolved after a full and complete record. Petitioner therefore renews his request that the Court vacate the judgment, enter the amended and additional findings requested in the motion, re-open the evidence, and order a new or additional evidentiary hearing to consider those claims which were excluded from the earlier evidentiary hearing.

<div style="margin-left:auto">

Respectfully submitted,

</div>

| | |
|---|---|
| Camille M. Knight | Jason D. Hawkins |
| Assistant Federal Public Defender | Federal Public Defender |
| | |
| Kevin Joel Page | /s/ J. Matthew Wright |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| | Texas Bar No. 24058188 |
| | Matthew_Wright@fd.org |
| | |
| Lara Wynn | Brandon E. Beck |
| Research and Writing Specialist | Research and Writing Specialist |
| | |
| | Office of the Federal Public Defender |
| | 525 S. Griffin Street, Suite 629 |
| | Dallas, Texas 75202 |
| | (214) 767-2746 |

## CERTIFICATE OF SERVICE

I filed this reply via ECF on August 28, 2015. Opposing Counsel is a registered user and is deemed served.

/s/ J. Matthew Wright